IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. _____

MCM ENTERTAINMENT, INC.,
MARIA CLAUDIA MOLINA, and
LUNAMAR WELLNESS GROUP,
LLC.,

      Plaintiffs,

v.

DIAZ WORLD TRADE GROUP, INC.
and MARCO DIAZ, Individually,

      Defendants.

_____/

## <u>VERIFIED COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF,<br>AND DEMAND FOR JURY TRIAL</u>

Plaintiffs, MCM Entertainment, Inc., Maria Claudia Molina, and Lunamar Wellness Group (herein after referred to as "Plaintiffs") bring this Complaint for trademark infringement and unfair competition, against Defendants Diaz World Trade Group, Inc. ("DWTG") and Marco Diaz ("Diaz"), individually, and allege as follows:

### <u>PRELIMINARY STATEMENT</u>

1.     This is an action arising from, among other things, Defendants' wrongful trademark infringement, trademark dilution, and unfair competition. Defendants utilized, and by information and belief Defendants continue to claim a right to Plaintiffs' famous and distinctive marks in commerce, in connection with goods and in advertising and domain name web presence, in ways that are confusingly similar, dilutive, and likely to cause confusion, deception, and mistake with Plaintiffs' trademarks.

2.      Defendants' conduct has caused and continues to cause direct and indirect economic harm and damages to Plaintiffs, and irreparable injury with no adequate remedy at law.

## PLAINTIFFS

3.      Plaintiff, MCM Entertainment, Inc., is a Florida company with a place of business at 251-174th Street – Apartment 208, Sunny Isles, FL 33160.

4.      Plaintiff, Maria Claudia Molina ("Claudia Molina"), is a legal resident of the State of Florida and resides in Miami-Dade County.

5.      Plaintiff, Lunamar Wellness Group, LLC, is a Florida company with a place of business at 251-174th Street – Apartment 208, Sunny Isles, FL 33160.

## DEFENDANTS

6.      Defendant, Diaz World Trade Group, Inc. ("DWTG"), is a Florida company with a principal place of business at 8566 N.W. 93rd Street, Medley, Florida 33166.

7.      Defendant, Marco Diaz, ("Diaz") is a legal resident of the State of Florida and resides in Miami-Dade County.

## JURISDICTION AND VENUE

8.      This is an action for trademark infringement and unfair competition arising under §§ 1114 and 1125 of the Trademark Act of July 5, 1946, commonly known as the Lanham Act, 15 U.S.C. §§ 1051, *et seq.*; and the laws of the State of Florida.

9.      This Court has subject matter jurisdiction over the claims in this Complaint pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338, and pursuant to the principles of supplemental jurisdiction under 28 U.S.C. § 1367.

10.     This Court has personal jurisdiction over Defendants because (1) Defendants reside and have its principal place of business in this State; (2) the causes of action asserted in this

Complaint arise out of Defendants' contacts with Florida and this judicial district; and (3) Defendants have caused tortious injury to Plaintiff in Florida and this judicial district.

11.     Venue is proper in this judicial district per 28 U.S.C. §§ 1391(b)(2), (c)(2), and (d) because Defendants are subject to personal jurisdiction in this judicial district. This Court has personal jurisdiction over Defendants as detailed above. Further, by information and belief, Defendants are selling products branded with the infringing trademarks in this judicial district via, among other places, its website. Additionally, the effects of the commission of torts outlined herein, including trademark infringement, trademark dilution, and unfair competition, including in online trade channels, are occurring in, aimed at, and/or felt by Plaintiffs located in Miami-Dade, Florida, which is located in this judicial district. Venue is therefore proper in this Court because a substantial part of the events and tortious conduct giving rise to the claims herein occurred in this judicial district and Defendants' misconduct occurred in this judicial district. The injury, harm, and damage Plaintiffs suffered and continues to experience has been inflicted in, and continues to be felt, in this District.

12.     Defendant DWTG conducts business in the State of Florida.

13.     Defendant DWTG renders and promotes its services (including services that infringe the Plaintiffs' trademarks) in Florida, including into this judicial district.

14.     Defendants DWTG and Diaz realize pecuniary gains by sales of services (including those that infringe the Plaintiffs' trademarks) into this judicial district.

## **FACTUAL BACKGROUND**

### **Plaintiffs' Trademarks**

15.     Plaintiffs' own trademarks for shapewear, clothing, books, videos, skin and hair products, as well as, health supplements perfected by federal and common law.

16.     Since at least as early as 2007, Plaintiffs have used and are the rightful owners of The Marks CLAUDIA MOLINA (United States Trademark Registration No. 4536532),  (United States Trademark Registration No. 6408787), CLAUDIA MOLINA (United States Trademark Registration No. 6408790), CUERPAZO FIT EN 45 DIAS (United States Trademark Registration No. 6409627), RETO CUERPAZO PARA SIEMPRE (United States Trademark Registration No. 6409633), and PELAZO (United States Trademark Serial No. 97442059) (hereinafter referred to as "The Marks").

17.     Plaintiffs' Marks are distinctive to the consuming public and Plaintiffs' trade.

18.     Claudia Molina has established a long-standing over 20 year public career and reputation with the consuming public building brands through ownership of trademarks that are distinctive to her talent and social brand.

19.     Claudia Molina has utilized her name, face and talent and brand to promote and deliver high quality goods and products to the consuming public.

20.     Plaintiffs have expended substantial time, money, and resources testing, marketing, advertising, and promoting the goods sold under The Marks, including through Plaintiffs' marketing, advertising and promotional efforts and channels for goods under The Marks.

21.     Plaintiffs have advertised and promoted physical fitness, personal care and related products under The Marks for many years, including as host of Univision's *Despierta America's* Health and Wellness segment with a global Spanish-speaking audience, Univision 23 in Miami, Puerto Rico, Chicago, Univision radio, Univision República, Hola TV, Mega TV, RCN TV Colombia, People en Español, and many other guest appearances and social media platforms, including, but not limited to Youtube.com, Instagram.com, Facebook.com, and Claudiamolina.com.     See     links     including     but     not     limited     to,

https://www.facebook.com/watch/?v=2493908607362691; https://youtu.be/h1W5RyfQ_mY;

https://www.instagram.com/tv/CWoRLL0JtUn/?igshid=YmMyMTA2M2Y=

22.     The Marks are well-known with a valuable goodwill belonging exclusively to Plaintiffs.

23.     As a result of The Marks distinctiveness and widespread use and promotion throughout the United States, including the talent of Plaintiff, Maria Claudia Molina. The Marks are famous trademarks within the meaning of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c), and was famous prior to Defendants' adoption of The Marks.

24.     Plaintiffs are the owners of valid and subsisting United States Trademark Registration No. 4536532 on the Principal Register for the trademark CLAUDIA MOLINA, with first date of use as of January 1, 2007, in connection with entertainment in the nature of live performances by actor, entertainer, host, fitness instructor; entertainment services, namely, live, televised and movie appearances by a professional entertainer; entertainment services, namely, providing a website featuring, photographic, audio and video presentations featuring fitness instruction; entertainment services, namely, personal appearances by actor, entertainer, host, fitness instructor; educational services, namely, instruction in the fields of fitness and nutrition; educational services, namely, providing instruction regarding personal fitness, nutrition, physical training; physical fitness and conditioning instruction and training featuring aerobic and anaerobic activities combined with resistance and flexibility training; providing live and televised exercise classes, body sculpting classes, group fitness classes, and group exercise instruction; providing information, instruction and advice over a global computer network on the subjects of exercise and fitness; providing instruction on the subject of nutrition.  A copy of this registration, which remains in full force and effect with respect to the services in International Class 41 (U.S. CLS 100, 101

and 107) and has become incontestable within the meaning of Section 15 of the Lanham Act, 15 U.S.C. § 1065, is annexed hereto as Exhibit "A".

25.     Plaintiffs are the owners of valid and subsisting United States Trademark Registration No. 6408787, on the Principal Register for the trademark CM Logo Registration, , with first date of use as of July 2016, in connection with body creams; body scrub; cosmetic body care preparations, namely, body gels; cosmetic body scrubs for the face, neck and hands; face creams for cosmetic use; hair balsam; hair care preparations; hair creams; hair lotions; hair shampoos and conditioners; hair spray; hair styling preparations; non-medicated anti-aging serum; skin and body topical lotions, creams and oils for cosmetic use; beauty creams for body care; liquid vitamin supplements; multi-vitamin preparations; powdered nutritional supplement drink mix containing vitamins, proteins, amino acids, collagen, organic spirulina, and organic chlorella; vitamin supplements; vitamin tablets; vitamin and mineral supplements; jeans; jumpsuits; leggings; pajamas; pants; shapewear; shirts; shorts; skirts; swimwear; underwear; athletic bottoms; athletic tops; jackets; sports caps and hats.  The Mark consists of a depiction of initials "CM" which stands for Claudia Molina.   A copy of this registration, which remains in full force and effect with respect to the services in International Classes 3, 5, and 25, and is annexed hereto as and is annexed hereto as Exhibit "B".

26.     Plaintiffs are the owners of valid and subsisting United States Trademark Registration No. 6408790, on the Principal Register for the trademark CLAUDIA MOLINA, with first date of use July 2016, in connection with body creams; body scrub; cosmetic body care preparations, namely, body gels; cosmetic body scrubs for the face, neck and hands; face creams for cosmetic use; hair balsam; hair care preparations; hair creams; hair lotions; hair shampoos and conditioners; hair spray; hair styling preparations; non-medicated anti-aging serum; skin and body

topical lotions, creams and oils for cosmetic use; beauty creams for body care; liquid vitamin supplements; multi-vitamin preparations; powdered nutritional supplement drink mix containing vitamins, proteins, amino acids, collagen, organic spirulina, and organic chlorella; vitamin supplements; vitamin tablets; vitamin and mineral supplements; jeans; jumpsuits; leggings; pajamas; pants; shapewear; shirts; shorts; skirts; swimwear; underwear; athletic bottoms; athletic tops; jackets; sports caps and hats.  A copy of this registration, which remains in full force and effect with respect to the services in International Classes 3, 5 and 25, and is annexed hereto as Exhibit "C".

27.    Plaintiffs are the owners of valid and subsisting United States Trademark Registration No. 6409627, on the Principal Register for the trademark CUERPAZO FIT EN 45 DIAS in the Mark is  "HOT BODY FIT IN 45 DAYS", with first date of use May 2019, in connection with providing fitness training services in the field of, namely, a website featuring exercise programs and information on physical fitness, exercise to achieve a toned and fit body; providing a website featuring information on exercise and fitness; providing a website featuring non-downloadable articles in the field of health and fitness, including nutritional tips with meal plans, recipes, tips for healthy habits and supplementation, and videos with exercise routines.  A copy of this registration, which remains in full force and effect with respect to the services in International Class 41 (U.S. CLS 100, 101 and 107), and is annexed hereto as Exhibit "D".

28.    Plaintiffs are the owners of valid and subsisting United States Trademark Registration No. 6409633, on the Principal Register for the trademark of the Mark RETO CUERPAZO PARA SIEMPRE in the Mark is "HOT BODY CHALLENGE FOREVER", with first date of use January 1, 2018, in connection with providing fitness training services in the field of losing weight, losing body fat and reaching an ideal weight; providing a website featuring

information on exercise and fitness; providing a website featuring non-downloadable articles in the field of health, fitness, and dietary challenges including nutritional tips with meal plans, recipes, tips for healthy habits and supplementation, and videos with exercise routines.  A copy of this registration, which remains in full force and effect with respect to the services in International Class 41 (U.S. CLS 100, 101 and 107), and is annexed hereto as Exhibit "E".

29.     Plaintiffs are the owners of United States Trademark Application Serial No. 97442059, for the trademark PELAZO, in the Mark is "GREAT HAIR", was filed on June 3, 2022, in connection with providing hair care creams; hair care lotions; hair care preparations; hair-washing powder; hair balsam; hair cleaning preparations; hair conditioner; hair creams; hair dressings for men; hair lacquers; hair mousse; hair mousses; hair nourishers; hair oils; hair products, namely, thickening control creams; hair relaxers; Hair rinses; hair shampoo; hair spray; hair straightening preparations; hair styling gel; hair styling preparations; hair styling spray; hair tonics; non-medicated hair serums; non-medicated hair care preparations; oils for hair conditioning; styling gels for enhancing hair.  A true and correct printout from the United States Patent and Trademark Office's electronic database showing the current status and title of The Mark is annexed hereto as Exhibit "F."

**Defendants' Unauthorized Use of Plaintiffs' Trademarked Products**

30.     Plaintiffs are the owners of www.shop.claudiamolina.com and use this domain under www.shopify.com to sell products under The Marks.  This domain was used and related to Plaintiffs' products by way of the online store.  By information and belief, Defendants, without the knowledge, consent or permission of Plaintiffs, purchased the domain name www.shopclaudiamolina.com through www.GoDaddy.com.  By information and belief, Defendants re-directed the use of www.shopclaudiamolina.com away from Plaintiffs' Shopify

online store where Defendants would benefit monetarily without Plaintiffs knowledge, consent or permission. Defendants' unlawful and illegitimate use of The Marks have created an unauthorized benefit to Defendants thereby causing harm to Plaintiffs.  Defendants' action and conduct are wrongful, improper and illegal. A true and correct copy of www.GoDaddy.com showing the resale of www.shopclaudiamolina.com is annexed hereto as Exhibit "G".

**The Agreements**

31.     On April 7, 2018, MCM Entertainment, Inc., f/s/o Maria Claudia Molina p/k/a Claudia Molina ("Licensor") and Diaz World Trade Group, Inc. ("Licensee") entered into a certain Retail Merchandising Agreement (hereinafter referred to as "First Agreement") authorizing DWTG to manufacture and distribute Plaintiffs' shapewear and sportswear in all 50 states in the United States, Latin America and the Caribbean related to The Marks in connection with services covered by United States Trademark Registration No. 4,536,532.

32.     Such First Agreement, which acknowledged that use of The Marks inured to the benefit of Plaintiffs and required that Defendant DWTG provide Plaintiffs with the following: (a) copies of all consumer data from the Official Online Store; (b) timely accounting including detailed written statements indicating for each of the licensed products; (c) the gross sales amounts; (d)  any applicable fees and/or taxes against such gross sales; (e) Defendant DWTG's selling price of the applicable licensed products; (f) quantity of sales; (g) the royalties due to Plaintiffs, (h) any other information necessary to enable Plaintiffs to calculated and verify the accuracy of the royalties payable; (i) any other information requested by Plaintiffs from time to time; (j) accurate and timely receipt of statement(s) and payment(s) of invoices to Plaintiffs'; (k) interest on late payments due to Plaintiffs; (l) to maintain proper records and books of accounts and keep accounts separate from any other products unrelated to Plaintiffs; (m) allow Plaintiffs and or authorized

representatives access to inspect and copy accounts and access DWTG's place of business and warehouse; (n) audit of accounts; (o) the responsibility for paying Plaintiffs reasonable attorneys' fees and the fees of any independent accountant incurred by the Plaintiffs or its representatives related to incorrect reporting of sales and/or stored products by DWTG to Plaintiffs; and (p) preservation of accounts for a period not less than six (6) years.

33.      Defendant DWTG unequivocally acknowledged and agreed that Plaintiffs are the proprietors of trademarks registered with the United States Patent and Trademark Office

34.      Defendant DWTG was strictly prohibited from use of Plaintiffs' trademarks at any time or in a manner likely to prejudice their legal protection or validity or cause confusion as to the ownership of Plaintiffs' trademarks.

35.      Defendant was required to obtain prior written consent of Plaintiffs to use the name of Plaintiffs or any trademarks, indications of origin, copyright material, character names or appearances of characters belonging to Plaintiffs, whether or not specifically related to the licensed properties.

36.      Defendant DWTG was prohibited during and after the term of the Agreement from taking any action that might invalidate the trademarks or copyrights, impair any of Plaintiffs' rights in or to the trademarks or copyrights, or create any rights adverse to those of Plaintiffs in the trademarks or copyrights.

37.      During or after the term of the Agreement, Defendant DWTG was and is strictly prohibited from challenging Plaintiffs' title or rights in or to the trademarks or copyrights, or assert the invalidity or contest any use or any registration by Plaintiffs of the trademarks or copyrights; and required to protect them from third-party infringement; ensuring Plaintiffs' copyright is not invalidated or impaired of any of Plaintiffs' rights in nor create any right adverse to those of

Plaintiffs in the trademarks or copyrights.  A true and correct copy of the Retail Merchandising License Agreement dated April 7, 2018 is attached hereto as Exhibit "H".

38.     On September 7, 2018, MCM Entertainment, Inc., f/s/o Maria Claudia Molina p/k/a Claudia Molina ("Licensor") and Diaz World Trade Group, Inc. ("Licensee") entered into a certain Retail Merchandising Agreement (hereinafter referred to as "Second Agreement") allowing DWTG to distribute the brand of Claudia Molina products that included body treatments and body creams, to handle customer service, to collect taxes and shipping from customers and pick and pack services related to The Marks in connection with services covered by United States Trademark Registration Nos. 6,408,787 and 6,408,790.  A true and correct copy of the Retail Merchandising License Agreement dated September 7, 2018 is attached hereto as Exhibit "I".

39.     On September 12, 2019, MCM Entertainment, Inc., f/s/o Maria Claudia Molina p/k/a Claudia Molina ("Licensor") and Diaz World Trade Group, Inc. ("Licensee") entered into a certain Retail Merchandising Agreement (hereinafter referred to as "Third Agreement") for the sourcing, sale and retailing of Plaintiffs' trademarked protein and BCAA products in connection with services covered by United States Trademark Registration Nos. 6,408,787 and 6,408,790. A true and correct copy of the Retail Merchandising License Agreement dated September 12, 2019 is attached hereto as Exhibit "J".

40.     On October 10, 2018, without Plaintiffs knowledge or consent, Defendants, Marco Diaz and DWTG clandestinely and unlawfully entered into a Mutual Confidentiality, Non-Solicitation and Exclusivity Agreement with Plato Rosinke, Julien Marie Incorporated and New World Nutritionals (hereinafter collectively referred to as "New World Nutritionals") for distribution of Plaintiffs' trademarked products under the brand Claudia Molina ("CM and/or

Maria Claudia Molina and/or MCM Entertainment Inc and/or Lunamar Wellness Group LLC and its related companies).

41.     Plaintiffs are the true owners of all confidential and proprietary documents, formulas, and products under The Marks that Defendants have compromised by entering into the clandestine agreement with New World Nutritionals.   A true and correct copy of the Mutual Confidentiality, Non-Solicitation and Exclusivity Agreement dated October 10, 2018, is attached hereto as Exhibit "K".

**Harm to Plaintiffs and the Public**

42.     By virtue of extensive recognition, the high quality of products offered under The Marks, Plaintiffs' incontestable trademark registration and other trademark registrations, as well as Plaintiffs' reputation and hard work, The Marks are famous and widely recognized in the United States and beyond as high quality products originating exclusively from Plaintiffs.

43.     The Marks have become an intrinsic and essential part of the valuable goodwill and property of Plaintiffs. Plaintiffs' name, image and brand are well-established and well-known to customers who trust and value the name "Claudia Molina". Therefore, only Plaintiffs and expressly authorized agents may use The Marks.

44.     Defendants' activities against The Marks falsely suggest that Defendants have ownership and/or licensing rights which Defendants do not have.

45.     Furthermore, Defendants' wrongful acts create a likelihood of confusion as to the name, brand, image, reputations, affiliation, ownership of the products and dilution of The Marks.

46.     Defendants' unlawful and illegitimate use of The Marks have created an unauthorized benefit to Defendants thereby causing harm to Plaintiffs.   Defendants' action and conduct are wrongful, improper and unlawful.

47.     Defendants' bad acts have irreparably harmed The Marks and, if not enjoined, will continue to irreparably harm Plaintiffs and the goodwill associated with its name, brand, image and products.

48.     Defendants' bad acts have irreparably harmed The Marks and, if not enjoined, will continue to irreparably harm consumers and the general public, who have an inherent interest in being free from confusion, mistake and deception.

49.     Plaintiffs have retained the undersigned law firm and have agreed to pay it a reasonable fee for its service.

50.     All conditions precedent to the institution of these proceedings have been satisfied, excused, or waived.

## COUNT I
## TRADEMARK INFRINGEMENT UNDER THE LANHAM ACT, 15. U.S.C. § 1114(1)

51.     Plaintiffs incorporate and re-allege paragraphs 1 through 50 as if fully set forth herein.

52.     Plaintiffs are the owners of federal trademark registrations in the United States Patent and Trademark Office, which is subsisting.

53.     Defendants' acts have injured Plaintiffs' use of The Marks and is likely to cause confusion, mistake and deception among consumers, the public and the trade as to whether Defendants' services are affiliated with, sponsored by, or endorsed by Plaintiffs.

54.     Confusion of source or sponsorship of Defendants' use of The Marks is inevitable based on the fact that from its inception Defendants' use of such marks in connection with the services was pursuant to Agreements authorizing use of said Marks under the direction and control of Plaintiffs.  At all times relevant to these proceedings, Defendants' were aware of Plaintiffs' rights in The Marks and the U.S. applications and registrations directed thereto.

55.     Defendants have acted with actual or constructive knowledge of Plaintiffs' rights in The Marks and registrations and, upon information and belief, with deliberate intention to confuse consumers.

56.     As a result of its unauthorized use of The Marks, Defendants have made and will continue to mark profits and/or gains to which they are not entitled.

57.     Defendants' actions, as set forth above, constitute infringement of Plaintiffs' trademark registrations in violation of the Lanham Act, 15 U.S.C. §1114(1).

**COUNT II**
**FEDERAL UNFAIR COMPETITION UNDER**
**THE LANHAM ACT, 15 U.S.C. § 1125(a)**

58.     Plaintiffs hereby incorporate and re-allege paragraphs 1 through 50 as if fully set forth herein.

59.     Plaintiffs have secured rights in The Marks in the United States prior to any use of the same by Defendants.

60.     At all times relevant to these proceedings and pursuant to the Agreements all use of The Marks for the services by Defendants have inured to the benefit of Plaintiffs. Defendants have no rights in The Marks.

61.     Defendants' continued use of The Marks without authorization and without submitting to Plaintiffs' direction and control constitutes unfair competition in violation of 15 U.S.C. § 1125(a).

62.     Defendants' offering of the services under The Marks is likely to cause confusion, mistake, and deception among the public.

63.     Defendants' use of the infringing marks falsely represents that their services and goods are connected or associated with the services and goods of Plaintiffs, all to the harm and

damage to Plaintiffs' own goodwill in The Marks. Such willful and intentional conduct on the part of Defendants places Plaintiffs' own reputation beyond its control, thereby causing irreparable injury to Plaintiffs and amounts to unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

64. Defendants' willful and infringing conduct has caused, is causing, and will cause, irreparable harm to Plaintiffs' trademark rights and that conduct will continue unless enjoined by the Court. Moreover, Plaintiffs are without an adequate remedy at law to halt such ongoing unlawful conduct.

Plaintiffs are entitled to entry of permanent injunctive relief restraining and enjoining Defendants pursuant to 15 U.S.C. § 1116.

## COUNT III
## TRADEMARK DILUTION UNDER THE LANHAM ACT, 15 U.S.C. § 1125(c)

65. Plaintiffs hereby incorporate and re-allege paragraphs 1 through 50 as if fully set forth herein.

66. The use of The Marks in the United States has been the subject of considerable publicity and promotion, and as a result such marks have become widely known and recognized by the general consuming public.

67. The Marks were famous and garnered recognition prior to any unauthorized use of such marks by Defendants.

68. Defendants' full knowledge of the renown of The Marks have capitalized on such renown to promote its business. Defendants have used and by information and belief continue to use The Marks in commerce in connection with the advertisement, promotion, sale and profit of the services under the Agreements.

69.     Defendants' actions as described herein have caused and continue to cause irreparable injury to, and a likelihood of dilution of the distinctive quality of, The Marks in violation of Plaintiffs' rights under 15 U.S.C. §1125(c) and common law.

70.     Defendants' wrongful use of Plaintiffs' trademarks is likely to impair the distinctive nature of those marks and to tarnish the reputation built with said marks.

71.     As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered irreparable harm to The Marks.  Unless Defendants are enjoined, the valuable marks will continue to be irreparably harmed and are likely to be diluted.

### COUNT IV
### VIOLATION OF FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, CHAPTER 501, PART II, FLORIDA STATUTES

72.     Plaintiffs hereby incorporate and re-allege paragraphs 1 through 50 as if fully set forth herein.

73.     Section 501.204(1), Florida Statutes states "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

74.     Defendants have infringed The Marks in violation of its trademark rights.

75.     Defendants' deliberate use of The Marks without authorization or knowledge of Plaintiffs is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, sponsorship or association of Defendants with Plaintiffs, or as to the origin, sponsorship or approval of Defendants' services.

76.     Defendants' deliberate conduct is likely to result in consumers purchasing Defendants' products in the mistaken belief that the same originate with or are offered under the auspices of Plaintiffs.

77.     Moreover, Defendants are withholding product that can expire or otherwise spoil which could cause further impact by among other things, diminishing the value of the brands and Marks and the reputation of Plaintiff Maria Claudia Molina.

78.     Plaintiffs have placed Defendants on notice of same and Defendants refuse to respond as of the date of the filing of this complaint.

79.     Such actions constitute unfair competition under Florida common law and have caused, and will continue to cause Plaintiffs to sustain damage.

80.     As a result of Defendants' violations of the Florida Deceptive and Unfair Trade Practices Act, Plaintiffs have and will continue to be damaged.

81.     Defendants have engaged in wanton, willful and wrongful acts and practices when they knew or should have known that such acts and practices were unfair or deceptive or otherwise prohibited by law.   Moreover, Plaintiffs are without an adequate remedy at law to halt such unlawful conduct.

## COUNT V
## TRADEMARK DILUTION UNDER
## SECTION 495.151, FLORIDA STATUTES

82.     Plaintiffs hereby incorporate and re-allege paragraphs 1 through 50 as if fully set forth herein.

83.     The Marks are famous within the State of Florida and beyond.

84.     The Marks have been the subject of substantial advertising and promotional expenditure and have garnered substantial publicity.

85.     Plaintiff, Maria Claudia Molina, a celebrity in the media profession is the face of The Marks, thereby providing media attention, that benefit the advertising, promotion, sale, and profit of the products.

86.     The Marks have been used and/or continue to be used in the State of Florida and elsewhere by Defendants on behalf of Plaintiffs without Plaintiffs' consent or knowledge.

87.     The Marks are inherently distinctive and have also acquired significant distinction and goodwill in the State of Florida by means of use and advertisement of The Marks and associated services throughout Florida since at least January of 2007.

88.     Unless Defendants are enjoined, the value of The Marks will continue to be irreparably harmed and are likely to be diluted in the State of Florida and beyond.

## COUNT VI
## BREACH OF CONTRACT

89.     Plaintiffs hereby incorporate and re-allege paragraphs 1 through 50 as if fully set forth herein.

90.     Defendants undertook the duty to perform certain contractual obligations under the Agreements. The terms of these contracts between Plaintiffs and Defendants include, but are not limited to, Defendants acknowledgment that Plaintiffs are the proprietors of trademarks registered with the United States Patent and Trademark Office and DWTG will not use the Plaintiffs' trademarks at any time or in a manner likely to prejudice their legal protection or validity, nor cause confusion as to the ownership of Plaintiffs' trademarks.

91.     Defendant DWTG agreed that it would not, without the written consent of Plaintiffs, make use of the name of Plaintiffs or any trademarks, indications of origin, copyright material, character names or appearances of characters belonging to Plaintiffs, whether or not specifically related to the licensed properties.

92.     Defendant DWTG further agreed that during or after the term of the Agreement, it would not take any action that might invalidate the trademarks or copyrights, impair any of

18

Plaintiffs' rights in or to the trademarks or copyrights, or create any rights adverse to those of Plaintiff in the trademarks or copyrights.

93.      Defendant DWTG also agreed that during or after the term of the Agreement, it would not challenge Plaintiffs' title or rights in or to the trademarks or copyrights, or assert the invalidity or contest any use or any registration by Plaintiffs of the trademarks or copyrights; protection from third-party infringement; ensuring Plaintiffs' copyright is not invalidated or impair any of Plaintiffs' rights in or to the trademarks or copyrights or create any right adverse to those of Plaintiffs in the trademarks or copyrights.

94.      At all times relevant herein, Defendants breached the valid and enforceable contractual obligations by, inter alia, engaging in alternate financial agreements with third-parties; claimed creative rights to The Marks; and sold Plaintiffs' products under The Marks under alternate third-party agreements. Each act constitutes a material breach as they are inconsistent with the terms of all of the Agreements referenced herein.

95.      At all times material, Plaintiffs have complied with all of the obligations under all of these contractual Agreements. As a result of Defendants' actions, Plaintiffs have been harmed as a result of these material breaches and now seeks liquidated damages, pursuant to the Agreements.

**COUNT VII**
**TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONSHIP**
**AS TO MARCO DIAZ**

96.      Plaintiffs hereby incorporate and re-allege paragraphs 1 through 50 as if fully set forth herein.

97.      Plaintiffs had a contractual relationship with Defendants prior to Defendant Diaz entering into any agreements with New World Nutritionals. Under the terms of the pre-existing

contract between Plaintiffs and Defendants, Defendants acknowledged that Plaintiffs are the proprietors of trademarks registered with the United States Patent and Trademark Office and that Defendant DWTG would not use the Plaintiffs' trademarks at any time or in a manner likely to prejudice their legal protection or validity, nor cause confusion as to the ownership of Plaintiffs' trademarks.

98.     Defendant DWTG agreed that it would not, without the written consent of Plaintiffs, make use of the name of Plaintiffs or any trademarks, indications of origin, copyright material, character names or appearances of characters belonging to Plaintiffs, whether or not specifically related to the licensed properties.

99.     Defendant DWTG further agreed that during or after the term of the Agreement, it would not take any action that might invalidate the trademarks or copyrights, impair any of Plaintiffs' rights in or to the trademarks or copyrights, or create any rights adverse to those of Plaintiff in the trademarks or copyrights.

100.    Defendant DWTG also agreed that during or after the term of the Agreement, it would not challenge Plaintiffs' title or rights in or to the trademarks or copyrights, or assert the invalidity or contest any use or any registration by Plaintiffs of the trademarks or copyrights; and required to protect them from third-party infringement; ensuring Plaintiffs' copyright is not invalidated or impaired of any of Plaintiffs' rights in nor create any right adverse to those of Plaintiffs in the trademarks or copyrights.

101.    At all times relevant herein, Defendant Diaz was fully knowledgeable of the business and contractual relationship between Plaintiffs and Defendant DWTG. Notwithstanding that knowledge, Defendant Diaz encouraged, facilitated, assisted, and caused Defendant DWTG to breach its agreement with Plaintiffs. Concurrently, Defendant Diaz was aware that The Marks

20

are the lawful property of the Plaintiffs which have been registered with the United States Patent and Trademark Office.  A true and correct copy of the Mutual Confidentiality, Non-Solicitation and Exclusivity Agreement is attached hereto as Exhibit "K".

102.    As a direct and proximate result of Defendant Diaz' infringing conduct alleged herein, Plaintiff have sustained, and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law. Unless Defendant Diaz' infringing conduct is enjoined by this Court, Defendant Diaz will continue to infringe The Marks at issue.

103.    Plaintiffs are entitled to preliminary and permanent injunctive relief restraining and enjoining Defendant Diaz' ongoing infringing conduct, pursuant to 15 U.S.C. § 1116.

**COUNT VIII**
**ACCOUNTING AND DAMAGES**

104.    Plaintiffs readopt and reallege the allegations contained in Paragraphs 1 through 50 as if fully set forth herein.

105.    This is an action for an accounting and damages and is directed to Defendants Diaz World Trade Group, Inc. and Marco Diaz.

106.    On or about April 7, 2018, MCM Entertainment, Inc., f/s/o Maria Claudia Molina p/k/a Claudia Molina ("Licensor") and Diaz World Trade Group, Inc. ("Licensee") entered into a certain Retail Merchandising Agreement (hereinafter referred to as "First Agreement") authorizing DWTG to manufacture and distribute Plaintiffs' shapewear and sportswear in all 50 states in the United States, Latin America and the Caribbean related to The Marks in connection with services covered by United States Trademark Registration No. 4,536,532.

107.    The First Agreement, which acknowledged that use of The Marks inured to the benefit of Plaintiffs and required that Defendant DWTG provide Plaintiffs with the following: (a) copies of all consumer data from the Official Online Store; (b) timely accounting including

detailed written statements indicating for each of the licensed products; (c) the gross sales amounts; (d) any applicable fees and/or taxes against such gross sales; (e) Defendant DWTG's selling price of the applicable licensed products; (f) quantity of sales; (g) the royalties due to Plaintiffs, (h) any other information necessary to enable Plaintiffs to calculated and verify the accuracy of the royalties payable; (i) any other information requested by Plaintiffs from time to time; (j) accurate and timely receipt of statement(s) and payment(s) of invoices to Plaintiffs'; (k) interest on late payments due to Plaintiffs; (l) to maintain proper records and books of accounts and keep accounts separate from any other products unrelated to Plaintiffs; (m) allow Plaintiffs and or authorized representatives access to inspect and copy accounts and access DWTG's place of business and warehouse; (n) audit of accounts; (o) the responsibility for paying Plaintiffs reasonable attorneys' fees and the fees of any independent accountant incurred by the Plaintiffs or its representatives related to incorrect reporting of sales and/or stored products by DWTG to Plaintiffs; and (p) preservation of accounts for a period not less than six (6) years.

108.    On September 7, 2018, MCM Entertainment, Inc., f/s/o Maria Claudia Molina p/k/a Claudia Molina ("Licensor") and Diaz World Trade Group, Inc. ("Licensee") entered into a certain Retail Merchandising Agreement (hereinafter referred to as "Second Agreement") allowing DWTG to distribute the brand of Claudia Molina products that included body treatments and body creams, to handle customer service, to collect taxes and shipping from customers and pick and pack services related to The Marks. *See* Exhibit "I."

109.    On September 12, 2019, MCM Entertainment, Inc., f/s/o Maria Claudia Molina p/k/a Claudia Molina ("Licensor") and Diaz World Trade Group, Inc. ("Licensee") entered into a certain Retail Merchandising Agreement (hereinafter referred to as "Third Agreement") for the sourcing, sale and retailing of Plaintiffs' trademarked protein and BCAA products. *See* Exhibit "J."

110.    On October 10, 2018, Defendants, Marco Diaz and DWTG entered into a Mutual Confidentiality, Non-Solicitation and Exclusivity Agreement with Plato Rosinke, Julien Marie Incorporated and New World Nutritionals (hereinafter collectively referred to as "New World Nutritionals") for distribution of Plaintiffs' trademarked products under the brand Claudia Molina ("CM and/or Maria Claudia Molina and/or MCM Entertainment Inc and/or Lunamar Wellness Group LLC and its related companies) without Plaintiffs' knowledge, consent or approval. *See* Exhibit "K."

111.    Defendants have failed to provide an accounting as required by the Agreements between the parties.

112.    By information and belief, Defendants have materially breached and tortiously interfered with the contracts as set forth herein.

113.    By information and belief, Defendants have been:

  a.  Misappropriating and misusing revenues and profits thereby depriving Plaintiffs revenues and profits; and/or

  b.  Misappropriating and misusing revenues and profits for personal gain in an unauthorized manner, thereby depriving Plaintiffs of revenues and profits; and/or

  c.  Engaging in the unauthorized sale and use of Plaintiffs' products; and/or

  d.  Unlawfully withholding Plaintiffs' products; and/or

  e.  unlawfully challenging Plaintiffs' title or rights in or to the trademarks or copyrights, or asserted the invalidity or contest any use or any registration by Plaintiffs of the trademarks or copyrights; and/or

  f.  violating the Agreements between the parties thereby jeopardizing and otherwise creating diminishment in value of Plaintiffs' Marks and/or loss of profits; and/or

  g.  clandestinely entering into at least one third-party agreement in violation of the Agreement with Plaintiffs.

114.     As a direct result of the breaches and violations of the Agreements between Plaintiffs and Defendants, as a result of the tortious interference with the Agreements, and the unaccounted for misappropriation of funds, the Plaintiffs have suffered damages and losses, including but not limited to, loss of revenues and profits from the Defendants misappropriation and diversion of same; violation of the Agreements and deprivation of valuable rights under the Agreements by Defendants. These damages are well in excess of the sum of Seventy-Five Thousand ($75,000.00) Dollars and are believed to be in the hundreds of thousands of dollars, for which the Defendants, are liable.

115.     By information and belief, the Defendants, have diverted, used and expended for unauthorized, unaccounted and/or unlawful purposes a large portion of this money, as well as the continuing revenues and profits from the sale of Plaintiffs' products.

116.     Plaintiffs do not know and are ignorant of the various transactions and transfers of diverted monies and the ultimate whereabouts of assets, customer lists, revenues and profits as a result of all the Defendants' illegal and unauthorized actions and threatened use of Plaintiffs' intellectual property rights, including, but not limited to, Claudia Molina's name and likeness.

117.     Defendants have restricted Plaintiffs' access to its online store thereby prohibiting Plaintiffs' lawful right to its products, inventory, customer lists, revenue and profits under the Agreements.

118.     Defendants have refused to account for inventory of Plaintiffs' products of which many have expiration dates that will prevent the products from being sold.  This further exposes Plaintiffs to losses, including, but not limited to, the diminishment of the value of The Marks.

119.     Plaintiffs demand upon Defendants, to account for all sums of money and to further account for all of the requirements under the agreements between the parties.

## COUNT IX
## CONSTRUCTIVE TRUST

120.     Plaintiffs readopt and reallege the allegations contained in Paragraphs 1 through 50 as though more fully set forth herein.

121.     Plaintiffs and Defendants entered into Agreements identified above.  At the time the parties entered into the Agreements, a relationship of trust existed between and amongst them.

122.     Defendants took advantage of their relationship of trust with Plaintiffs through fraud, or by abuse of confidence, reposed and accepted, such that the Defendants gained something for themselves which in equity and good conscience they should not be permitted to hold which includes extensive inventory of Plaintiffs' products.

123.     Defendants have wrongfully misappropriated Plaintiffs' monies due and owing and products and are using Plaintiffs' products under The Marks for their own benefit and/or use.

124.     The monies due and owing include Plaintiffs' percentage for sales in May 2022 and June 2022 that Defendants refuse to provide, are estimated at over $196,000.00.

125.     Defendants have exercised and taken dominion, control and custody over Plaintiffs' products and have excluded and deprived Plaintiffs access to the products and proceeds of the sale of products.

126.     It is unjust for Defendants to be allowed to retain the proceeds from the sale of Plaintiffs' products and the inventory products under The Marks, as Defendants acquired same deceitfully and in an otherwise wrongful manner.

127.     Unless a constructive trust is imposed over the proceeds of the sale and inventory of Plaintiffs' products, Defendants would be unjustly enriched at the expense of Plaintiffs.

128.    A constructive trust is necessary as there is no other adequate and speedy remedy at law that can prevent Defendants, from removing or depleting the aforesaid products once and for all.

## COUNT X
## APPOINTMENT OF RECEIVER

129.    Plaintiffs readopt and reallege the allegations contained in Paragraphs 1 through 50 and 118 through 125 as though more fully set forth herein.

130.    The Court should appoint a Receiver and direct such Receiver to take possession of the products and inventory and preserve and protect the assets, revenues and profits from further issue by Defendants; to take control of the products/inventory and preserve and protect the assets, revenues and profits from further misuse by Defendants during the pendency of these proceedings and further request that the Receiver be required to account to Plaintiffs for Defendants' misuse, waste of assets and misappropriation of funds.

## COUNT XI
## VIOLATION OF DEFEND TRADE SECRETS ACT (DTSA)

131.    Plaintiffs readopt and reallege the allegations contained in Paragraphs 1 through 50 as though more fully set forth herein.

132.    Defendants have engaged in the actual or threatened misappropriation of Plaintiffs' Marks and Confidential Information, in violation of the Defend Trade Secrets Act (DTSA), 18 U.S.C. § 1836, *et seq*.

133.    The Confidential Information is related to products provided by Plaintiffs that are used in and intended for use in interstate commerce.

134.    Defendants, among other things, clandestinely entered into a contract with manufacturer New World Nutritionals without Plaintiffs' knowledge or consent.

135.     Moreover, Defendants without authorization entered into an agreement and provided confidential formulas of Plaintiffs' products to New World Nutritionals that compromised the integrity and ownership of the products under The Marks.

136.     Defendants' actions were intentional, willful, outrageous and malicious, justifying the imposition of injunctive relief and actual and exemplary damages.

## COUNT XII
## MISAPPROPRIATION OF TRADE SECRETS AND CONFIDENTIAL INFORMATION

137.     Plaintiffs readopt and reallege the allegations contained in Paragraphs 1 through 50 as though more fully set forth herein.

138.     Defendants have engaged in the actual or threatened misappropriation of Plaintiffs' Confidential Information, in violation of common law and the Florida Uniform Trade Secrets Act., Chapter 688.001, *et seq*.

139.     Defendants' actions were and continue to be intentional, willful, outrageous and malicious, justifying the imposition of injunctive relief and actual and exemplary damages.

## COUNT XIII
## FRAUD

140.     Plaintiffs readopt and reallege the allegations contained in Paragraphs 1 through 139 as though more fully set forth herein.

141.     Defendants intentionally entered into an Agreement with New Word Nutritionals and violated the Agreements with Plaintiffs.

142.     Defendants by way of the Agreements with Plaintiffs, agreed to protect Plaintiffs from third-party infringement; agreed to ensure Plaintiffs' copyright would not be invalidated or impaired and agreed, among other things, not to create any right adverse to those of Plaintiffs in the trademarks or copyrights.

27

143.     Defendants made numerous, repeated false statements of fact, actions and/or omissions, including, but not limited to, (a) Defendants claims that they have title or rights in Plaintiffs trademarks; (b) purchasing the   domain name www.shopclaudiamolina.com through www.GoDaddy.com to clandestinely divert customers to Defendants domain instead of Plaintiffs www.shop.claudiamolina.com and use this domain under www.shopify.com to sell products under The Marks; and (c) clandestinely behind the back of Plaintiffs entering into a contract with manufacturer New World Nutritionals for financial gain at the detriment of Plaintiffs;

144.     Defendants omitted to disclose material information which, if disclosed, would have revealed Defendants scheme to defraud Plaintiffs, including (i) Defendants' intent to directly benefit from Plaintiffs' Marks without knowledge and consent of Plaintiffs; (ii) Defendants' intentional violation of the Agreements entered into with Plaintiffs; (iii) Defendants intent to financially benefit from Plaintiffs' products without Plaintiffs' knowledge or consent; and (iv) Defendants intent to distribute, sell, profits, and comprise Plaintiffs' products under The Marks.

145.     The statements of fact, misrepresentations and omissions were known by Defendants to be false and misleading at the time they were made or omitted to be disclosed.

146.     The false statements, misrepresentations and omissions were made for the purpose of inducing Plaintiffs to rely upon them in the course of conducting its business, and Plaintiffs did in fact rely upon the truth of the statements and misrepresentations.

147.     Defendants' scheme to defraud Plaintiffs by false statements, misrepresentations, omissions of fact and concealment of activities have caused the loss of business, reputation, and customer and supplier goodwill.

148.    The actions of Defendants were intentional, willful, outrageous and malicious, justifying the imposition of not only compensatory damages and injunctive relief but also attorneys' fees and costs and punitive damages.

**COUNT XIV**
**UNJUST ENRICHMENT**

149.    Plaintiffs readopt and reallege the allegations contained in Paragraphs 1 through 50 as though more fully set forth herein.

150.    Defendants have failed to pay Plaintiffs for profits from sales of products from at least May 2022 to the present.

151.    Defendants have withheld Plaintiffs' products/inventory without justification even after demand for same.

152.    Defendants have claimed creative rights and continued use of The Marks without authorization and without submitting to Plaintiffs' direction.

153.    Defendants have  engaged in clandestine agreement(s) with third parties and have revealed confidential information that have harmed Plaintiffs.

154.    Defendants have sold Plaintiffs' products under The Marks under alternate third-party agreement(s).

155.    As a result of Defendants' actions, Plaintiffs have been unjustly harmed.

156.    Circumstances were such that Defendants knew or reasonably should have known that Plaintiffs would expect payments from Defendants for the sales and for the monies accepted and conferred on Defendants.

157.    Defendants have accepted, used, enjoyed and benefited from the monies and products rendered.  The benefit of the monies withheld and products Defendants are holding constitutes unjust enrichment.

158.     Defendants have refused and continue to refuse to pay Plaintiffs the monies or provide the products held in inventory. It is inequitable for Defendants to retain the benefits without paying the value thereof to Plaintiffs.

**COUNT XV**
**PRELIMINARY AND PERMANENT INJUNCTION**

159.     Plaintiffs readopt and reallege the allegations contained in Paragraphs 1 through 50 as though more fully set forth herein.

160.     This is an action for injunctive relief pursuant to Federal Rule of Civil Procedure 65.

161.     Plaintiffs seek the issuance of preliminary and permanent injunction requiring Defendants to perform under the Agreements, including Defendants' obligation to keep confidential, proprietary, and/or trade secret information.

162.     Plaintiffs have a substantial likelihood of success on the merits of its claims against Defendants, including for breach of the Agreements.

163.     A substantial threat of irreparable injury to Plaintiffs exists if Defendants are not required to abide by the terms of the Agreements and restrict the dissemination of confidential information which is essential to Plaintiffs' products and The Marks.

164.     The actual and threatened injury, loss, or damage to Plaintiffs far outweighs any prejudice that Defendants may suffer as a result of the entry of a preliminary or permanent injunction.

165.     The issuance of preliminary and permanent injunction requiring Defendants to perform obligations under the Agreements, including, but not limited to, keeping confidential certain proprietary and/or trade secret information would best serve the public interest.

166.     Plaintiffs have no adequate remedy at law.

167.     Security in the amount of $5,000 is appropriate.

WHEREFORE, Plaintiffs MCM ENTERTAINMENT, INC., MARIA CLAUDIA MOLINA, and LUNAMAR WELLNESS GROUP, LLC., request:

A.     That this Court hold that Defendants have infringed Plaintiffs' trademarks as identified in paragraph 16 herein;

B.     That this Court adjudge that Defendants have unfairly competed with Plaintiffs under 15 U.S.C. §1125(a) by the use of the identical marks without authorization;

C.     That this Court adjudge that Plaintiffs are the owners of The Marks that are being diluted under 15 U.S.C. §1125(c);

D.     That the Court adjudge that one or more of The Marks is famous in the State of Florida and that the famous mark(s) are being diluted under Florida State Law;

E.     That this Court hold that there is a substantial likelihood that Defendants will continue such unlawful activities unless immediately and permanently enjoined from doing so;

F.     That this Court grant a preliminary and permanent injunction enjoining DWTG and Diaz and its' agents, servants, employees, attorneys, and those persons in active concert or participation with them, or any of them, from infringement of The Marks, and from engaging in unfair trade practices, including enjoining all use of The Marks, or any other colorable imitation of Plaintiffs' Trademarks, whether as a mark, metatag, keyword, name, or domain name, or variation of domain name; or component of a mark, metatag, keyword, name or variation or domain name, or in any other manner likely to cause confusion with Plaintiffs' marks;

G.     That this Court order Defendants to surrender immediately for destruction all products and packaging that depict the infringing marks, and other materials constituting infringement of Plaintiffs', in Defendants' possession, custody or control pursuant to 15 U.S.C. § 1118;

H.     That all damages sustained by Plaintiffs by trebled and that Defendants be compelled to pay damages pursuant to 15 U.S.C. § 1117(a);

I.     That because of the exceptional nature of the case and the willful and intentional nature of Defendants' unlawful conduct, the Court award Plaintiffs reasonable attorneys' fees and costs in accordance with 15 U.S.C. §1117(a).

J.     That the Defendants be directed to account to the Plaintiffs for all funds and product received, sold and/or shipped or assigned by the Defendants in connection with the Agreements;

K.     That the Defendants be directed to account for all of the Defendants' acts in accordance with the Agreements and otherwise provide copies of all consumer data from the Official Online Store; monthly calendar accountings including detailed written statements indicating for each of the licensed products, without limitation, the gross sales amounts, any applicable fees and/or taxes against such gross sales, DWTG's selling price of the applicable licensed products, quantity of sales, the royalties due to Plaintiffs, and any other information necessary to enable Plaintiffs to calculated and verify the accuracy of the royalties payable; accurate receipt of statement) and payment of invoices and shipping fees to Plaintiffs; interest on late payments due to Plaintiffs; provide proper records and books of accounts; allow access to inspect and copy accounts and access

DWTG's place of business and warehouse in furtherance of conducting an audit of accounts;

L.      That the Plaintiffs have judgment against the Defendants for all sums or balances found to be due and owing the Plaintiffs from the Defendants;

M.      That a constructive trust on all monies dispersed or to be dispersed from the sale of the products or monies transferred into any bank account or other tangible or intangible asset and any sums as may be found to have been wrongfully taken from the Plaintiffs;

N.      That a Receiver be appointed to take control of the products/inventory and preserve and protect the assets, revenues and profits from further misuse by the Defendants.

O.      Enjoin, temporarily and preliminarily, Defendants to preserve and not destroy any originals or copies of all files, documents and/or data containing any confidential, proprietary or trade secret information of Plaintiffs as well as all communications, documents and/or data referring or relating to Plaintiffs' products.

P.      Enjoin, temporarily, preliminarily and permanently thereafter, Defendants from directly or indirectly using, disclosing or retaining any confidential, proprietary or trade secret information of Plaintiffs.

Q.      Enjoin, temporarily, preliminarily and permanently following a final order of this Court,  Defendants from soliciting, doing business with, selling to, any of Plaintiffs' products which are confidential and protected as intellectual property;

R.      Enjoin, temporarily, preliminarily and permanently from communicating with  prospective client, customer or accounts, who have purchased or have been solicited with Plaintiffs' products, including, but not limited to providing a customer list;

S.      Order Defendants to return to Plaintiffs all Plaintiffs' confidential, proprietary or trade secret information and produce for inspection and analysis all personal computers, smartphones, thumb drives and any other digital media storage devices in Defendants' possession or control;

T.      Order Defendants to provide a detailed accounting of all funds and other benefits of economic value attributable directly or indirectly to the activities of selling Plaintiffs' products;

U.      Enter final judgment in Plaintiffs' favor and against Defendants for monetary damages, including, but not limited to, all amounts necessary to compensate Plaintiffs for Defendants' wrongful activities, including profits corresponding to Plaintiffs from sales, including those since May 2022 and all of the monies that may be determined to be owed upon an accurate accounting, and any and all damages as well as reasonable attorneys' fees and costs and pre - and post-judgment interest;

V.      Enter final judgment in Plaintiffs favor and against Defendants for punitive or exemplary damages and pre - and post-judgment interest for Defendants' willful and malicious conduct, as well as for preliminary and permanent injunction as requested hereunder; and

W.      That Plaintiffs have such other and further relief as this Court deems just and proper.

## **<u>DEMAND FOR JURY TRIAL</u>**

Pursuant to Fed. R. Civ. P. 38, Plaintiffs hereby demand a trial by jury on all issues so triable.

ROIG LAWYERS
44 W. Flagler Street, Suite 2100
Miami, FL 33130
Tel: (305) 405-0997
Pleadings@roiglawyers.com
Nbellido@roiglawyers.com

By: */s/ Nelson C. Bellido*
     Nelson C. Bellido
     Fla. Bar. No. 974048

     -   and   -

ALBERT BORDAS, P.A.
5975 Sunset Drive, Suite 705
Miami, FL 33143
Tel: (305) 669-9848
albert@bordasiplaw.com

By: */s/ Albert Bordas*
     Albert Bordas
     Fla. Bar. No. 330220

*Attorneys for Plaintiffs*

## <u>VERIFICATION</u>

I, Maria Claudia Molina, hereby certify as follows:

1.      I am the President of MCM ENTERTAINMENT, INC. and LUNAMAR WELLNESS GROUP, LLC., and as such, I am authorized to make this Verification on behalf of Plaintiffs.

2.      I have read the attached Verified Complaint and based on my personal knowledge and my knowledge of information reported to me, and in my capacity, the factual allegations regarding the events contained in the Verified Complaint are true and correct.

3.      I certify under penalty of perjury under the laws of the United States of America that the foregoing statements made by me are true and correct.

_____
MARIA CLAUDIA MOLINA
9/30/2022