**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 22-cv- 23189-RKA**

MCM ENTERTAINMENT, INC.,
MARIA CLAUDIA MOLINA, and
LUNAMAR WELLNESS GROUP,
LLC.,

       Plaintiffs,

v.

DIAZ WORLD TRADE GROUP, INC.
And MARCO DIAZ, Individually,

       Defendants.

_____

## <u>DEFENDANTS, DIAZ WORLD TRADE GROUP, INC. AND MARCO DIAZ'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S COMPLAINT</u>

COME NOW Defendants DIAZ WORLD TRADE GROUP, INC and MARCO DIAZ ("Defendants"), by and through undersigned counsel, and file their Answer and Affirmative Defenses to Plaintiffs' Complaint (Plaintiffs and Defendants collectively, the "Parties"), and state as follows:

1. Denied.
2. Denied.
3. Admitted.
4. Denied as Defendants are without knowledge as to Molina's legal residency.
5. Admitted.
6. Admitted.
7. Admitted.
8. Admitted for jurisdictional purposes. Denied that they are grounds for action.
9. Admitted for jurisdictional purposes.
10. Admitted for jurisdictional purposes. Denied as to any wrongful conduct by Defendants.

11. Admitted as to venue allegations. Denied that Defendants have caused any injury or that Plaintiffs are entitled to relief.

12. Admitted.

13. Paragraph 13 is admitted for venue purposes. Denied that Defendants have caused any injury or that Plaintiffs are entitled to relief.

14. Paragraph 14 is admitted for venue purposes. Denied that Defendants have caused any injury or that Plaintiffs are entitled to relief.

15. Denied.

16. Defendants are without knowledge as to the earliest date that Plaintiffs may have used "Claudia Molina," which was registered as a trademark in 2014, and therefore deny. Defendants deny the remaining allegations.

17. Denied.

18. Denied.

19. Denied.

20. Denied as stated; in fact, it was Defendants who developed and delivered the high quality goods and products that are the subject of this action to the consuming public.

21. Denied.

22. Denied.

23. Denied as to all trademarks excepting the trademark "Claudia Molina," registered in 2014, No. 4536532.

24. Denied. All listed trademarks, with the exception of "Claudia Molina," registered in 2014, No. 4536532, were created solely and or jointly with Defendants.

25. Defendants admit that Plaintiff MCM ENTERTAINMENT, INC. ("MCM") owns Trademark No. 4536532, registered on May 27, 2014. Defendants are without knowledge as to the first date of use and therefore denied.

26. Denied.

27. Denied.

28. Denied.

29. Denied.

30. Denied.

31. Denied.

32. Admitted as to Plaintiff MCM and for Trademark No. 4536532, "Claudia Molina." Denied as to other Plaintiffs and other alleged trademarks.

33. Admitted as to Plaintiff MCM and for Trademark No. 4536532, "Claudia Molina." Denied as to other Plaintiffs and other alleged trademarks.

34. Admitted as to Plaintiff MCM and for Trademark No. 4536532, "Claudia Molina." Denied as to other Plaintiffs and other alleged trademarks.

35. Denied.

36. Admitted as to Plaintiff MCM and for Trademark No. 4536532, "Claudia Molina." Denied as to other Plaintiffs and other alleged trademarks.

37. Admitted as to Plaintiff MCM and for Trademark No. 4536532, "Claudia Molina." Denied as to other Plaintiffs and other alleged trademarks.

38. Admitted as to Plaintiff MCM and for Trademark No. 4536532, "Claudia Molina." Denied as to other Plaintiffs and other alleged trademarks.

39. Admitted as to Plaintiff MCM and for Trademark No. 4536532, "Claudia Molina." Admitted that the partners agreed to split all profit and expenses "50/50." Denied as to Trademarks Nos. 6408787 and 6408790, which were registered on July 6, 2021.

40. Denied.

41. Denied that Defendants acted without Plaintiffs' knowledge or consent. Admitted that Defendants contracted with New World Nutritionals regarding products.

42. Admitted that Exhibit K is a true and correct copy of the agreement. Denied as to remainder of Paragraph 41.

43. Denied.

44. Denied that the trademarks, excepting that of Trademark No. 4536532, "Claudia Molina," are the property of Plaintiffs.

45. Admitted that Defendants have ownership rights in the listed trademarks, excepting that of Trademark No. 4536532, "Claudia Molina." Denied as to the remainder.

46. Denied in its entirety, including accusations of wrongfulness.

47. Denied in its entirety, including accusations of unlawful and illegitimate use.

48. Denied.

49. Denied in its entirety, including accusations of bad acts.

50. Defendants are without knowledge as to the allegations in paragraph 49 of the Complaint, therefore, denied.

## COUNT 1
## TRADEMARK INFRINGEMENT UNDER THE LANHAM ACT, 15. U.S.C. § 1114(1)

51. Defendants incorporate and re-allege their responses to Paragraphs 1-50 as if fully set forth herein.

52. Defendants are without knowledge as to which trademark registrations Plaintiffs are referring to in paragraph 52 of the Complaint, therefore, denied.

53. Denied

54. Denied.

55. Denied.

56. Denied.

57. Denied.

## COUNT II
## FEDERAL UNFAIR COMPETITION UNDER
## THE LANHAM ACT, 15 U.S.C. § 1125(a)

58. Defendants incorporate and re-allege their responses to Paragraphs 1-50 as if fully set forth herein.

59. Denied.

60. Denied.

61. Denied.

62. Denied.

63. Denied.

64. Denied.

Defendants deny that Plaintiffs are entitled to the relief requested.

**COUNT III**
**TRADEMARK DILUTION UNDER THE LANHAM ACT, 15 U.S.C. § 1125(c)**

65. Defendants incorporate and re-allege their responses to Paragraphs 1-50 as if fully set forth herein.

66. Denied.

67. Denied.

68. Denied.

69. Denied.

70. Denied.

71. Denied.

**COUNT IV**
**VIOLATION OF FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICE ACT, CHAPTER 501, PART II, FLORIDA STATUTES**

72. Defendants incorporate and re-allege their responses to Paragraphs 1-50 as if fully set forth herein.

73. Admitted.

74. Denied.

75. Denied.

76. Denied.

77. Denied.

78. Denied.

79. Denied.

80. Denied.

**81.** Denied.

## COUNT V
## TRADEMARK DILUTION UNDER
## SECTION 495.151, FLORIDA STATUTES

82. Defendants incorporate and re-allege their responses to Paragraphs 1-50 as if fully set forth
    herein.

83. Denied.

84. Denied.

85. Denied.

86. Denied.

87. Denied.

88. Denied.

## COUNT VI
## BREACH OF CONTRACT

89. Defendants incorporate and re-allege their responses to Paragraphs 1-50 as if fully set forth
    herein.

90. Denied.

91. Denied.

92. Denied.

93. Denied.

94. Denied.

95. Denied.

## COUNT VII
## TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONSHIP
## AS TO MARCO DIAZ

96. Defendants incorporate and re-allege their responses to Paragraphs 1-50 as if fully set forth herein.

97. Denied.

98. Denied.

99. Denied.

100.    Denied.

101.    Denied.

102.    Denied.

103.    Denied.

**<u>COUNT VIII</u>**
**<u>ACCOUNTING AND DAMAGES</u>**

104.    Defendants incorporate and re-allege their responses to Paragraphs 1-50 as if fully set forth herein.

105.    Admitted.

106.    Admitted as to the trademark "Claudia Molina," Registration No. 4536532. Denied as to any other trademark.

107.    Denied.

108.    Denied.

109.    Denied.

110.    Denied.

111.    Denied.

112.    Denied.

113.     Denied.

114.     Denied.

115.     Denied.

116.     Denied.

117.     Denied.

118.     Denied.

119.     Denied

## COUNT IX
## CONSTRUCTIVE TRUST

120.     Defendants incorporate and re-allege their responses to Paragraphs 1-50 as if fully

set forth herein.

121.     Denied.

122.     Denied.

123.     Denied.

124.     Denied.

125.     Denied.

126.     Denied.

127.     Denied.

128.     Denied.

## COUNT X
## APPOINTMENT OF RECEIVER

129.     Defendants incorporate and re-allege their responses to Paragraphs 1-50 as if fully set forth herein.

130.     Denied. Defendants oppose the relief requested in Paragraph 130.

## COUNT XI
## VIOLATION OF DEFEND TRADE SECRETS ACT (DTSA)

131.     Defendants incorporate and re-allege their responses to Paragraphs 1-50 as if fully set forth herein.

132.     Denied.

133.     Denied.

134.     Denied.

135.     Denied.

136.     Denied.

## COUNT XII
## MISAPPROPRIATION OF TRADE SECRETS AND CONFIDENTIAL INFORMATION

137.     Defendants incorporate and re-allege their responses to Paragraphs 1-50 as if fully set forth herein.

138.     Denied.

139.     Denied.

## COUNT XIII
## FRAUD

140.     Defendants incorporate and re-allege their responses to Paragraphs 1-50 as if fully

set forth herein.

141.     Denied.

142.     Denied.

143.     Denied.

144.     Denied.

145.     Denied.

146.     Denied.

147.     Denied.

148.     Denied.

## COUNT XIV
## UNJUST ENRICHMENT

149.     Defendants incorporate and re-allege their responses to Paragraphs 1-50 as if fully

set forth herein.

150.     Denied.

151.     Denied.

152.     Denied.

153.     Denied.

154.     Denied.

155.     Denied.

156.    Denied.

157.    Denied.

158.    Denied.

## COUNT XV
## PRELIMINARY AND PERMANENT INJUNCTION

159.    Defendants incorporate and re-allege their responses to Paragraphs 1-50 as if fully set forth herein.

160.    Admitted.

161.    Denied.

162.    Denied.

163.    Denied.

164.    Denied.

165.    Denied.

166.    Denied.

The relief requested by the Plaintiffs should be denied in their entirety.

## STATEMENT OF DEFENSES

1.  As and for an affirmative defense, Defendants assert that the Complaint should be dismissed, in whole or in part, for failure to state a claim for which relief can be granted.

2.  License. Plaintiffs' claims regarding all common-law trademarks of the parties' implied partnership or joint venture are barred due to the existence of the trademark.

3.  Plaintiffs' claims for damages involving Defendants' contractual relationship with New World Nutritionals, which involved the production of products for the parties' implied

partnership or joint venture, are barred because of the doctrine of ratification, in that Plaintiffs knew of the contractual relationship, knew they could reject the contractual relationship, and then accepted the contractual relationship.

4. One or more of Plaintiffs' claims for damages are barred by the doctrine of ratification, in that Plaintiffs knew of Defendants acts or transaction which allegedly breached a contract, they knew they could reject the contract because of the alleged breach, and they accepted the act or transaction, or expressed their intention to accept the act or transaction.

5. One or more of Plaintiffs' trademark registrations are invalid, due to the trademark being the common-law trademark of the parties' implied partnership or joint venture.

6. One or more of Plaintiffs' claims are subject to the doctrine of laches, because Plaintiffs unreasonably delayed efforts to enforce their rights, if any, despite full awareness of Defendants' actions.

7. Plaintiffs' claims are barred by estoppel, acquiescence, and/or unclean hands.

8. One or more of Plaintiffs' claims are barred because Plaintiffs are not the owners of the mark which it has asserted claims, due to the parties' implied partnership or joint venture which owned one or more common-law trademarks before Plaintiffs' filing for trademark registration.

9. Defendants are the senior users of one or more common-law trademarks in controversy and have superior rights.

10. If Plaintiffs have suffered any damages, which is specifically denied, Plaintiffs failed to mitigate such damages, including without limitation by failing to distinguish their goods through a disclaimer or other means, or to seek an arrangement to prevent or reduce consumer confusion before filing this lawsuit.

11. Plaintiffs' claims are barred by the doctrine of unjust enrichment because a judgment for Plaintiffs would mean the uncompensated transfer of substantial goodwill built up by Defendants in connection with the trademarks and implied partnership or joint venture.

12. Plaintiff Lunamar Wellness Group, LLC's claims are barred because it lacks standing to bring them.

13. Defendants' actions as alleged by Plaintiffs were justified under state and federal law.

14. Plaintiffs' claims for punitive damages are barred or limited by the state and federal Constitution.

15. Plaintiffs' claims are barred where Plaintiffs have not acquired trademark rights due to unlawful use in commerce of the mark in connection with the sale of goods of the implied partnership or joint venture.

16. Plaintiffs' claims are barred in whole or in part because one or more marks do not meet the requisite standard for fame, which requires that a mark be widely recognized by the general consuming public of the United States as a designation of the source of the goods or services of the mark's owner.

17. Plaintiffs' claims are barred, in whole or in part, because the alleged infringement, if any, was innocent.

18. Plaintiffs' claims are barred because Plaintiffs' alleged damages, if any, were not caused by Defendants.

19. Plaintiffs' claims for injunctive relief are barred because Plaintiffs cannot show that they will suffer any irreparable harm from Defendants' actions.

20. Plaintiffs' alleged trademark registration is unenforceable because of Plaintiffs' own commission of fraud on the United States Patent & Trademark Office (USPTO), including

but not limited to representing to the USPTO that (1) Plaintiff MCM was the sole user of the mark "Pelazo" despite having actual knowledge of Defendants' use of the mark, and (2) Defendants began using the mark much earlier than the date represented by Plaintiff MCM, and (3) Plaintiffs were the owners of and used the mark "Pelazo" in commerce, despite not owning the mark and not using it in commerce.

21. Plaintiffs' claims are barred by its bad-faith adoption of the mark at issue.

Respectfully Submitted,

**TREMBLY LAW FIRM**
*Counsel for Plaintiff*
9700 South Dixie Highway, PH 1100
Miami, Florida 33156
Telephone: (305) 431-5678
E-Mail: robert@tremblylaw.com
E-Mail: service@tremblylaw.com

By: /s/ Robert W. Brock II
    **Robert William Brock II**
    Florida Bar No. 75320

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 27, 2022, the foregoing was filed with the Clerk of Court and on all counsel of record via CM/ECF.

By: /s/ Robert W. Brock II
    **Robert William Brock II**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 22-cv- 23189-RKA**

MCM ENTERTAINMENT, INC.,
MARIA CLAUDIA MOLINA, and
LUNAMAR WELLNESS GROUP,
LLC.,

       Plaintiffs,

v.

DIAZ WORLD TRADE GROUP, INC.
And MARCO DIAZ, Individually,

       Defendants.
_____

DIAZ WORLD TRADE GROUP, INC.
And MARCO DIAZ, Individually,

       Plaintiffs,

v.

MCM ENTERTAINMENT, INC.,
MARIA CLAUDIA MOLINA, and
LUNAMAR WELLNESS GROUP,
LLC.,

       Counter-Defendants.
_____/

## COUNTERCLAIM

    **COME NOW** Defendants/Counter-Plaintiffs DIAZ WORLD TRADE GROUP, INC. and MARCO DIAZ ("Counter-Plaintiffs"), by and through undersigned counsel, and pursuant to Fed. R. Civ. P. §13(a)(1) hereby file their Counterclaim against Plaintiffs/Counter-Defendants MCM ENTERTAINMENT, INC ("MCM"), MARIA CLAUDIA MOLINA ("MOLINA"), and LUNAMAR WELLNESS GROUP, LLC ("LWG") (MCM, MOLINA, and LWG, collectively, "Counter-Defendants"), and allege as follows:

## THE PARTIES

1.      Counter-Plaintiff, MARCO DIAZ, is an individual over the age of 18, residing in Miami-Dade County, and is otherwise *sui juris*.

2.      Counter-Plaintiff, DIAZ WORLD TRADE GROUP, INC. is a Florida Profit Corporation organized and existing under the laws of the State of Florida, and who was, at all times material hereto, conducting business in Medley, Florida.

3.      Counter-Defendant, MOLINA, is an individual over the age of 18, residing in Miami-Dade County, and is otherwise *sui juris*.

4.      Counter-Defendant, MCM ENTERTAINMENT, INC. is a Florida Profit Corporation organized and existing under the laws of the State of Florida, with a place of business in Molina's apartment at 251-174th Street – Apartment 208, Sunny Isles, Florida 33160

5.      Counter-Defendant, LUNAMAR WELLNESS GROUP, LLC is a Florida limited liability company organized and existing under the laws of the State of Florida, with a place of business in Molina's apartment at 251-174th Street – Apartment 208, Sunny Isles, Florida 33160

## JURISDICTION AND VENUE

6.      This is an action for damages and the amount in controversy exceeds $30, 000.00.

7.      Jurisdiction and venue are proper within this Court as this action is a compulsory counterclaim and the actions that give rise to this Counterclaim occurred in Miami-Dade County, Florida.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

8.      This is an action for damages resulting from Counter-Defendants' ouster of Counter-Plaintiffs as an owner in several trademarks developed subject to the business relationship between Counter-Plaintiffs and Counter-Defendants.

9.      In or around 2015, Counter-Plaintiffs and Counter-Defendants developed a working relationship where MOLINA would act as the brand ambassador and Counter-Plaintiffs would handle the business aspects so that the parties could work together to create and name

several new products and product lines and the parties would share in the costs and profits of the products.

10.     Prior to the subject business relationship with Counter-Plaintiff, the only products Counter-Defendants had was shapewear, a clothing line, the book "Jugosa y Fit" which was launched in partnership with Univision, and the book "Cuerpazo Para Siempre," and Counter-Defendants had no store or workout videos.

11.     Counter-Plaintiffs presented the business opportunity of creating a DVD named "Entrenamiento de Emergencia 911" which was first released on January 17, 2017. This DVD was created by both Counter-Plaintiffs and Counter-Defendants conjunctively and the copyright for this product is vested in Counter-Plaintiffs as indicated by the product.

12.     After the success of the "Entrenamiento de Emergencia 911" DVD, Counter-Plaintiffs presented the business opportunity to capitalize on the same market by developing a customer challenge called "RETO CUERPAZO PARA SIEMPRE" wherein customers would need to purchase three specific products including the DVD to participate in the challenge hosted through Facebook groups.

13.     On January 15, 2018, the first "RETO CUERPAZO PARA SIEMPRE" challenge was launched by Counter-Plaintiffs and Counter-Defendants.

14.     Counter-Plaintiffs and Counter-Defendants executed four (4) "RETO CUERPAZO PARA SIEMPRE" challenges with approximately 3,000 individuals in the first year.

15.     On April 7, 2018, Counter-Plaintiffs and Counter-Defendants entered into an agreement regarding the sale of Counter-Defendants' shapewear and clothing line. *See* Exhibit A.

16.     On November 21, 2018, Counter-Plaintiffs entered into an agreement for the sale of the Master Class DVD with Counter-Defendants wherein Counter-Plaintiffs would sell the DVD on the official online store for a commission (the "2018 DVD Agreement").

17.     This 2018 DVD Agreement was made upon MOLINA's misrepresentations as to the value and availability of the product as MOLINA intentionally withheld material information, namely, that she would be launching digital content without Counter-Plaintiffs rendering the DVD obsolete.

18.     Unbeknownst to Counter-Plaintiffs, Counter-Defendants created a digital program and launched a fifth "RETO CUERPAZO PARA SIEMPRE" challenge adapting the physical

content created by Counter-Plaintiffs to digital content without Counter-Plaintiff's consent or knowledge in order to receive all the profits from the challenge.

19.     On information and belief, Counter-Defendants continue to launch subsequent "RETO CUERPAZO PARA SIEMPRE" challenges utilizing Counter-Plaintiffs' content without compensating Counter-Plaintiffs accordingly.

20.     On information and belief, Counter-Defendants have reaped approximately two million dollars ($2,000,000.00) in profits from these subsequent "RETO CUERPAZO PARA SIEMPRE" challenges without payment to Counter-Plaintiff.

21.     In contrast, while Counter-Plaintiffs have not received any further compensation for the "RETO CUERPAZO PARA SIEMPRE" challenges after the fourth challenge, Counter-Plaintiffs still shoulder the burden of paying the costs to send the challenges winners' prize packages.

22.     In addition to co-creating the "RETO CUERPAZO PARA SIEMPRE" challenges, Counter-Plaintiffs also entered a business arrangement with Counter-Defendants to create and sell topical products.

23.     Specifically, Counter-Plaintiffs presented Counter-Defendants with a topical body fat burner kit and Counter-Plaintiffs' resources to manufacture this product with a manufacturer with which Counter-Plaintiffs had a pre-existing relationship.

24.     On September 7, 2018, Counter-Plaintiffs, MOLINA, and MCM entered into a written agreement for the division of the costs and profits for the production and sale of body creams and other cosmetic products including the topical body fat burner kit suggested, developed and named by Counter-Plaintiffs. *See* Exhibit B.

25.     In addition to these cosmetic products, Counter-Plaintiffs created a line of supplements including BCAA and proteins which the parties would jointly participate in the liabilities and profits of.

26.     On September 12, 2019, Counter-Plaintiffs and Counter-Defendants entered into a written agreement for the division of the costs and profits for the production and sale of the BCAA and proteins. *See* Exhibit C.

27.     With the success of the supplements, Counter-Plaintiffs suggested expanding the supplement line to include collagen which became a bestseller within a few months.

28. Like with the "Entrenamiento de Emergencia 911" DVD, Counter-Plaintiffs' ownership is indisputable as evidenced by DIAZ WORLD TRADE GROUP, INC. being named on the product labels. Specifically, the product labels state that the product was "manufactured for" both LWG and DIAZ WORLD TRADE GROUP, INC. *See* Exhibit D.

29. On October 12, 2020, unbeknownst to Counter-Plaintiffs, Counter-Defendants filed an application with the United States Patent and Trademark Office ("USPTO") for the mark "CLAUDIA MOLINA" Registration No. 6408790, fraudulently naming the sole owner as MCM. This mark includes:

    a. International Class 003 for the following goods which were allegedly first used in July 2018 in connection with the mark: Body creams; Body scrub; Cosmetic body care preparations, namely, body gels; Cosmetic body scrubs for the face, neck and hands; Face creams for cosmetic use; Hair balsam; Hair care preparations; Hair creams; Hair lotions; Hair shampoos and conditioners; Hair spray; Hair styling preparations; Non-medicated anti-aging serum; Skin and body topical lotions, creams and oils for cosmetic use; Beauty creams for body care;

    b. International Class 005 for the following goods which were allegedly first used in October 2019 in connection with the mark: Liquid vitamin supplements; Multi-vitamin preparations; Powdered nutritional supplement drink mix containing vitamins, proteins, amino acids, collagen, organic spirulina, and organic chlorella; Vitamin supplements; Vitamin tablets; Vitamin and mineral supplements; and

    c. International Class 025 for the following goods which were allegedly first used in July 2016 and in which Counter-Plaintiffs do not allege any ownership interest: Jeans; Jumpsuits; Leggings; Pajamas; Pants; Shapewear; Shirts; Shorts; Skirts; Swimwear; Underwear; Athletic bottoms; Athletic tops; Jackets; Sports caps and hats.

30.     On October 12, 2020, unbeknownst to Counter-Plaintiffs, Counter-Defendants filed an application with the United States Patent and Trademark Office ("USPTO") for the CM logo[1] Registration No. 6408787, fraudulently naming the sole owner as MCM.  This mark includes:

    a.  International Class 003 for the following goods which were allegedly first used in July 2018 in connection with the mark: Body creams; Body scrub; Cosmetic body care preparations, namely, body gels; Cosmetic body scrubs for the face, neck and hands; Face creams for cosmetic use; Hair balsam; Hair care preparations; Hair creams; Hair lotions; Hair shampoos and conditioners; Hair spray; Hair styling preparations; Non-medicated anti-aging serum; Skin and body topical lotions, creams and oils for cosmetic use; Beauty creams for body care;

    b.  International Class 005 for the following goods which were allegedly first used in October 2019 in connection with the mark: Liquid vitamin supplements; Multi-vitamin preparations; Powdered nutritional supplement drink mix containing vitamins, proteins, amino acids, collagen, organic spirulina, and organic chlorella; Vitamin supplements; Vitamin tablets; Vitamin and mineral supplements; and

    c.  International Class 025 for the following goods which were allegedly first used in July 2016 and in which Counter-Plaintiffs do not allege any ownership interest: Jeans; Jumpsuits; Leggings; Pajamas; Pants; Shapewear; Shirts; Shorts; Skirts; Swimwear; Underwear; Athletic bottoms; Athletic tops; Jackets; Sports caps and hats.

31.     On October 14, 2020, unbeknownst to Counter-Plaintiffs, Counter-Defendants filed an application with the USPTO for the mark "RETO CUERPAZO PARA SIEMPRE" Registration No. 6409633, fraudulently naming the sole owner as MCM.  This mark includes International Class 041 for the following services which were first allegedly used on January 1, 2018: Providing fitness training services in the field of losing weight, losing body fat and reaching an ideal weight; Providing a website featuring information on exercise and fitness; Providing a website featuring non-downloadable articles in the field of health, fitness, and dietary challenges including

---

[1] 

nutritional tips with meal plans, recipes, tips for healthy habits and supplementation, and videos with exercise routines.

32.     Counter-Defendants fraudulently filed these marks without Counter-Plaintiffs' knowledge or consent in order to avoid acknowledging Counter-Plaintiffs' rightful ownership interest in the marks. The marks should have been properly filed with both MCM and DIAZ WORLD TRADE GROUP, INC. as owners.

33.     In addition to fraudulently filing the above-mentioned marks, on June 3, 2022, Counter-Defendants fraudulently filed an application with the USPTO for the mark "PELAZO" Serial Number 97442059 naming MCM as the sole owner of the mark. This mark includes International Class 003 for future use for the following goods: Hair care creams; Hair care lotions; Hair care preparations; Hair-washing powder; Hair balsam; Hair cleaning preparations; Hair conditioner; Hair creams; Hair dressings for men; Hair lacquers; Hair mousse; Hair mousses; Hair nourishers; Hair oils; Hair products, namely, thickening control creams; Hair relaxers; Hair rinses; Hair shampoo; Hair spray; Hair straightening preparations; Hair styling gel; Hair styling preparations; Hair styling spray; Hair tonics; Non-medicated hair serums; Non-medicated hair care preparations; Oils for hair conditioning; Styling gels for enhancing hair.

34.     The "PELAZO" trademark and product was created by Counter-Plaintiffs in 2009 and actively sold that product from 2015 to 2019 and as such, the "PELAZO" trademark was created by Counter-Plaintiffs prior to the relationship between Counter-Plaintiffs and Counter-Defendants. See attached the Contract and Declaration which prove Counter-Plaintiffs prior use and ownership of the name "PELAZO."

35.     Counter-Plaintiffs suggested bringing the product under the business relationship as part of the expansion of the business' product line, however, this was not an invitation for Counter-Defendant to steal the product or trademark or fraudulently file an application declaring MCM the sole owner of the mark.

36.     Counter-Plaintiffs never renounced, released, forfeited or in any way limited or gave up its ownership rights of the product or the trademark.

37.     Nonetheless, Counter-Defendants once again went behind Counter-Plaintiffs back in order to claim wrongful ownership over a product and trademark in order to avoid acknowledging Counter-Plaintiffs' rightful ownership interest and further Counter-Defendants profits at Counter-Plaintiffs' detriment.

38.     Moreover, prior to the fall out between the parties, Counter-Plaintiffs and Counter-Defendants were arranging an expansion of the hair and skin care product lines and in order to accommodate the incoming supply of products, Counter-Plaintiffs and Counter-Defendants agreed to rent an additional warehouse to store these products and to purchase a van for distribution of the product line and packages.

39.     Counter-Plaintiffs and Counter-Defendants entered into a verbal agreement wherein Counter-Defendants agreed to pay a portion of the rent of the warehouse in the amount of $5,700.00 per month for a period of twelve (12) months to Counter-Plaintiffs in order to defray the costs of operations.

40.     Counter-Defendant made one (1) payment of $5,700.00 and has since failed to uphold her obligations under the verbal agreement.

41.     Under Counter-Defendants' representation and upon reliance that Counter-Defendants intended to continue the business relationship, Counter-Plaintiffs purchased a van for distribution of product in the amount of $70,422.40 and incurred approximately $17,000.00 in costs including warehouse racking, office remodeling and office furniture in February and March 2022 in addition to operational costs of the business.

42.     Despite Counter-Defendants' representations to Counter-Plaintiffs and with full knowledge of the costs incurred by Counter-Plaintiffs in reliance with those representations, Counter-Defendants unilaterally decided to terminate the business relationship with Counter-Plaintiffs leaving Counter-Plaintiffs with a significant amount of debt while Counter Defendants hoard the profits that only grew due to Counter-Plaintiffs efforts and business acumen and connections.

## <u>COUNT I – DECLARATORY ACTION</u><br><u>(AGAINST ALL COUNTER-DEFENDANTS)</u>

43.     Counter-Plaintiffs re-allege and re-incorporate the allegations set forth in paragraphs 1 through 43 as if fully set forth herein.

44.     There is a bona fide, actual, present, and practical need for declaratory relief.

45.     The declaration concerns a present, ascertained, or ascertainable set of facts or a present controversy as to a set of facts— that Counter-Plaintiffs and Counter-Defendants were engaged in joint business operations whereby each had certain roles to grow the business, namely Counter-Defendants acted as the brand ambassador and Counter-Plaintiffs handled the operations

of the business and that as an owner in the business venture, Counter-Plaintiffs has ownership rights in certain trademarks for which applications were filed by Counter-Defendants without recognizing Counter-Defendants ownership rights in the same and the profits generated by the business venture.

46.     An immunity, power, privilege, or right of Counter-Plaintiffs is dependent upon the facts or the law applicable to the facts.

47.     Counter-Plaintiffs reasonably may have, an actual, present, adverse, and antagonistic interest in the subject matter, either in fact or in law.

48.     The antagonistic and adverse interests are all before this Court by proper process or class representation.

49.     The relief sought is not merely giving of legal advice or the answer to questions propounded for curiosity.

**WHEREFORE**, Counter-Plaintiffs, DIAZ WORLD TRADE GROUP, INC. and MARCO DIAZ, respectfully demand a declaration that Counter-Plaintiffs have certain ownership rights over the business operations and certain trademarks from the same and for such further relief as this Court deem just and proper.

## COUNT II – ALTERNATIVELY, BREACH OF IMPLIED PARTNERSHIP (AGAINST ALL COUNTER-DEFENDANTS)

50.     Counter-Plaintiffs re-allege and re-incorporate the allegations set forth in paragraphs 1 through 43 as if fully set forth herein.

51.     This is an action for Breach of Implied Partnership against Counter-Defendants.

52.     Counter-Plaintiffs and Counter-Defendants engaged in the type of relationship and interaction that created an implied partnership between them.

53.     Counter-Plaintiffs and Counter-Defendants participated in the control of the business.

54.     Counter-Plaintiffs and Counter-Defendants contributed to the labor and capital of the business and have a mutuality of interest in both profits and losses, and agreed to share in the assets and liabilities of the business.

55.    By their actions, Counter-Defendants breached the implied partnership with Counter-Plaintiffs.

56.    As a result of Counter-Defendants' actions, Counter-Plaintiffs have been damaged.

WHEREFORE, Counter-Plaintiffs DIAZ WORLD TRADE GROUP, INC. and MARCO DIAZ respectfully request this Court enter judgment against Counter-Defendants, MCM ENTERTAINMENT, INC, MARIA CLAUDIA MOLINA, and LUNAMAR WELLNESS GROUP, LLC, for actual and compensatory damages, costs, pre-judgment interest, and for such further relief as this Court deems just and proper.

<u>**COUNT III – ALTERNATIVELY, BREACH OF JOINT VENTURE AGREEMENT (AGAINST ALL COUNTER-DEFENDANTS)**</u>

57.    Counter-Plaintiffs re-allege and re-incorporate the allegations set forth in paragraphs 1 through 43 as if fully set forth herein.

58.    Counter-Plaintiffs and Counter-Defendants entered into a verbal agreement in which they would share a community of interest in the operation of the business.

59.    Counter-Plaintiffs and Counter-Defendants agreed that they would jointly control and operate the business.

60.    Counter-Plaintiffs and Counter-Defendants agreed that they would have a joint proprietary interest in the business, the business assets, and the profits and losses stemming from the same.

61.    Counter-Plaintiffs and Counter-Defendants agreed that they would share the profits of the business and the business assets stemming from the same including but not limited to the products and product lines.

62.    Counter-Plaintiffs and Counter-Defendants agreed that they would share the losses of the business and the business assets stemming from the same including but not limited to the products and product lines.

63.    Counter-Defendants have breached the joint venture agreement by preventing Counter-Plaintiffs' access to the business, the business' assets including but not limited to the business' online store and the profits generated from the business and fraudulently filing trademark

applications with the USPTO purposefully failing to recognize Counter-Plaintiffs' ownership rights in those trademarks.

**WHEREFORE**, Counter-Plaintiffs DIAZ WORLD TRADE GROUP, INC. and MARCO DIAZ respectfully request this Court enter judgment against Counter-Defendants MCM ENTERTAINMENT, INC, MARIA CLAUDIA MOLINA, and LUNAMAR WELLNESS GROUP, LLC for actual and compensatory damages, costs, pre-judgment interest, and for such further relief as this Court deems just and proper.

## COUNT IV – IMPOSITION OF CONSTRUCTIVE TRUST
## (AGAINST ALL COUNTER-DEFENDANTS)

64.     Counter-Plaintiffs re-allege and re-incorporate the allegations set forth in paragraphs 1 through 43 as if fully set forth herein.

65.     Counter-Plaintiffs are seeking to have the court impose a constructive trust on their beneficiary interest in the business, business assets including but not limited to the trademarks and products, and the profits from the same (the "Property") that Counter-Defendants are withholding.

66.     Counter-Defendants promised Counter-Plaintiffs that in connection with the business, the parties would split profits and losses according to their verbal and written agreements.

67.     In reliance thereon, Counter-Plaintiffs incurred certain losses on behalf of the business and Counter-Plaintiffs absorbed the profits and benefits of the business prior to Counter-Defendants' bad faith behavior wherein they excluded Counter-Plaintiffs from certain profitable assets of the business and purposefully failed to recognize Counter-Plaintiffs' ownership rights to certain trademarks in fraudulently filed trademark applications.

68.     Counter-Plaintiffs allege that a constructive trust would be the correct remedy, or in the alternative, a remedy other than that sought in Count I, as a constructive trust is a remedy to which equity applies in order to do justice.

69.     The constructive trust would be equitably imposed to prevent the unjust enrichment of Counter-Defendants at the expense of Counter-Plaintiffs.

70.     Even when property is not acquired by fraud,  a constructive trust in this instance would be proper as a constructive trust can be imposed if equity would be offended should Counter-Plaintiffs' interest in the Property be retained by Counter-Defendants.

71.     Counter-Plaintiffs alleges that the imposition of a constructive trust by the Court is necessary to do justice and prevent the unjust enrichment of MOLINA at the expense of DIAZ.

**WHEREFORE**, Counter-Plaintiffs, DIAZ WORLD TRADE GROUP, INC. and MARCO DIAZ, respectfully request this Court enter judgment against Counter-Defendants, MCM ENTERTAINMENT, INC, MARIA CLAUDIA MOLINA, and LUNAMAR WELLNESS GROUP, LLC, imposing a constructive trust on his interest in the Property and, further, award Counter-Plaintiffs their costs for the filing of this action.

<u>**COUNT V – EQUITABLE LIEN**</u>
<u>**(AGAINST ALL COUNTER-DEFENDANTS)**</u>

72.     Counter-Plaintiffs re-allege and re-incorporate the allegations set forth in paragraphs 1 through 43 as if fully set forth herein.

73.     An equitable lien is a right granted by a court of equity, arising by reason of the conduct of the parties affected, that would entitle one party as a matter of equity to proceed against certain property.

74.     An equitable lien is a right, enforceable only in equity, to have a demand satisfied from a particular fund or specific property, without having possession of the fund or property; equitable liens become necessary on account of the absence of similar remedies at law.

75.     An equitable lien may be declared by a court of equity out of general considerations of right and justice as applied to the relations of the parties and the circumstances of their dealings.

76.     The imposition of equitable liens is based on the premise that one should not be unjustly enriched; indeed, an equitable lien is a remedial tool that is used to prevent an inequity of one party against another and that may be used as means of enforcing, against a piece of property, a party's obligation that has resulted in benefit to that property.

77.     Generally, under Florida law, an equitable lien may be imposed on one of two bases: (1) a written contract that indicates an intention to charge a particular property with a debt or obligation; or (2) a declaration by a court out of general considerations of a right or justice, as applied to the particular circumstances of a case.

78.     In this case, Counter-Plaintiffs significantly developed and improved the business, and the business assets including but not limited to the trademarks and products (the "Property").

79.    Here, an equitable lien should be imposed on the Property and the profits from the same due to the general considerations of a right or justice as applied to these and to preclude Counter-Defendants from becoming unjustly enriched by the Counter-Plaintiffs' contributions and efforts towards Property.

80.    Despite Counter-Plaintiffs' contributions and efforts, Counter-Defendants are unwilling to compensate Counter-Plaintiffs.

81.    Accordingly, circumstances would be unjust and unfair if Counter-Defendants were allowed to keep all of the benefits Counter-Plaintiffs put toward the Property without fairly compensating Counter-Plaintiffs.

**WHEREFORE**, Counter-Plaintiffs DIAZ WORLD TRADE GROUP, INC. and MARCO DIAZ respectfully request this Court enter judgment in its favor and impose an equitable lien on the Property and enter an order to satisfy Counter-Plaintiffs' equitable lien and any further relief the Court deems just and proper.

## COUNT VI – ALTERNATIVELY, UNJUST ENRICHMENT
## (AGAINST ALL COUNTER-DEFENDANTS)

82.    Counter-Plaintiffs re-allege and re-incorporate the allegations set forth in paragraphs 1 through 43 as if fully set forth herein.

83.    Counter-Plaintiffs conferred benefits upon Counter-Defendants by significantly developing, improving and operating the business including development of products and trademarks for the benefit of Counter-Defendants, for which Counter-Plaintiffs was never compensated.

84.    Counter-Defendants has knowledge of such benefits.

85.    Counter-Defendants voluntarily accepted and retained the benefits of Counter-Plaintiffs' services.

86.    Counter-Defendants' retention of the benefits of Counter-Plaintiffs' services, without payment to Counter-Plaintiffs, would be wholly inequitable.

**WHEREFORE,** Counter-Plaintiffs DIAZ WORLD TRADE GROUP, INC. and MARCO DIAZ respectfully request this Court enter judgment against Counter-Defendants, MCM ENTERTAINMENT, INC, MARIA CLAUDIA MOLINA, and LUNAMAR WELLNESS GROUP, LLC for actual and compensatory damages, costs, pre-judgment interest, and for such further relief as this Court deems just and proper.

## COUNT VII – ACCOUNTING
## (AGAINST ALL COUNTER-DEFENDANTS)

87.     Counter-Plaintiffs re-allege and re-incorporate the allegations set forth in paragraphs 1 through 43 as if fully set forth herein.

88.     DIAZ and MOLINA share a fiduciary relationship in the sense that DIAZ in that they were partners in the business.

89.     The questioned transactions are complex in that the interest and profits which DIAZ should have received are not small or simple transactions due to the complex operations of the company and his partnership with MOLINA.

90.     DIAZ's remedy at law is inadequate as it is currently unknown what the amount of the business' profits were and the value of his interest in the business, and the business assets including but not limited to the trademarks and products is.

91.     DIAZ has a right in the funds involved in the demanded accounting, as they are DIAZ's share of the proceeds of the partnership.

**WHEREFORE,** Counter-Plaintiffs, DIAZ WORLD TRADE GROUP, INC. and MARCO DIAZ, respectfully request this Court enter judgment against Counter-Defendants, MCM ENTERTAINMENT, INC, MARIA CLAUDIA MOLINA, and LUNAMAR WELLNESS

GROUP, LLC, for actual and compensatory damages, costs, pre-judgment interest, and for such further relief as this Court deems just and proper.

## COUNT VIII – BREACH OF FIDUCIARY DUTIES
## (AGAINST MOLINA)

92.     Counter-Plaintiffs re-allege and re-incorporate the allegations set forth in paragraphs 1 through 43 as if fully set forth herein.

93.     DIAZ and MOLINA, through their personal and business relationship, where in a position of mutual trust which created a mutual fiduciary duty to each other and the business venture.

94.     As a member of the business venture, MOLINA owed a fiduciary duty to DIAZ and the business venture.

95.     MOLINA, while the business venture was still viable, by withholding profits and ownership rights from Counter-Plaintiffs, including but not limited to the ownership rights in the trademarks, breached that duty.

96.     By MOLINA's breach of her fiduciary duty, Counter-Plaintiffs have been damaged.

**WHEREFORE,** Counter-Plaintiffs DIAZ WORLD TRADE GROUP, INC. and MARCO DIAZ respectfully request this Court enter judgment against Counter-Defendant, MARIA CLAUDIA MOLINA, for actual and compensatory damages, costs, pre-judgment interest, and for such further relief as this Court deems just and proper.

## COUNT IX – FRAUD IN THE INDUCEMENT
## (AGAINST MOLINA)

97.     Counter-Plaintiffs re-allege and re-incorporate the allegations set forth in paragraphs 1 through 43 as if fully set forth herein.

98.     On November 21, 2018, Counter-Plaintiffs entered into an agreement for the sale of the Master Class DVD with Counter-Defendants wherein Counter-Plaintiffs would sell the DVD on the official online store for a commission (the "2018 DVD Agreement").

99.     MOLINA mispresented the value and availability of the product and intentionally withheld material information, namely, that she would be launching digital content for the same workouts and requiring purchases of the digital content in order to participate in challenges rendering the DVD obsolete.

100.     This 2018 DVD Agreement was made upon MOLINA's misrepresentations as to the value and availability of the product as MOLINA intentionally withheld material information, namely, that she would be launching digital content without Counter-Plaintiffs rendering the DVD obsolete.

101.     But for MOLINA's misrepresentation, Counter-Plaintiffs would not have entered into the 2018 DVD Agreement.

102.     MOLINA knew or should have known that the statements regarding the product's value and availability were false.

103.     Counter-Plaintiffs were damaged in reliance on MOLINA's misrepresentation.

**WHEREFORE,** Counter-Plaintiffs, DIAZ WORLD TRADE GROUP, INC. and MARCO DIAZ, respectfully request this Court enter judgment against Counter-Defendant, MARIA CLAUDIA MOLINA, for actual and compensatory damages, costs, pre-judgment interest, and for such further relief as this Court deems just and proper.

## COUNT X – FRAUD
## (AGAINST MOLINA)

104.     Counter-Plaintiffs re-allege and re-incorporate the allegations set forth in paragraphs 1 through 43 as if fully set forth herein.

105.    Counter-Plaintiffs and MOLINA and MCM developed a working relationship where MOLINA would act as the brand ambassador and Counter-Plaintiffs would handle the business aspects so that the parties could work together to create and name several new products and product lines and the parties would share in the costs and profits of the products.

106.    In attempting to hide assets and profits from Counter-Plaintiffs, MOLINA and MCM applied for registration of several trademarks with the USPTO further described below.

107.    On October 12, 2020, unbeknownst to Counter-Plaintiffs, Counter-Defendants filed an application with the United States Patent and Trademark Office ("USPTO") for the mark "CLAUDIA MOLINA" Registration No. 6408790, fraudulently naming the sole owner as MCM. This mark includes:

    a.    International Class 003 for the following goods which were allegedly first used in July 2018 in connection with the mark: Body creams; Body scrub; Cosmetic body care preparations, namely, body gels; Cosmetic body scrubs for the face, neck and hands; Face creams for cosmetic use; Hair balsam; Hair care preparations; Hair creams; Hair lotions; Hair shampoos and conditioners; Hair spray; Hair styling preparations; Non-medicated anti-aging serum; Skin and body topical lotions, creams and oils for cosmetic use; Beauty creams for body care;

    b.    International Class 005 for the following goods which were allegedly first used in October 2019 in connection with the mark: Liquid vitamin supplements; Multi-vitamin preparations; Powdered nutritional supplement drink mix containing vitamins, proteins, amino acids, collagen, organic spirulina, and organic chlorella; Vitamin supplements; Vitamin tablets; Vitamin and mineral supplements; and

    c.    International Class 025 for the following goods which were allegedly first used in July 2016 and in which Counter-Plaintiffs do not allege any ownership interest: Jeans; Jumpsuits; Leggings; Pajamas; Pants; Shapewear; Shirts; Shorts; Skirts; Swimwear; Underwear; Athletic bottoms; Athletic tops; Jackets; Sports caps and hats.

108.    On October 12, 2020, unbeknownst to Counter-Plaintiffs, Counter-Defendants filed an application with the United States Patent and Trademark Office ("USPTO") for the CM logo[2] Registration No. 6408787, fraudulently naming the sole owner as MCM.  This mark includes:

    a.   International Class 003 for the following goods which were allegedly first used in July 2018 in connection with the mark: Body creams; Body scrub; Cosmetic body care preparations, namely, body gels; Cosmetic body scrubs for the face, neck and hands; Face creams for cosmetic use; Hair balsam; Hair care preparations; Hair creams; Hair lotions; Hair shampoos and conditioners; Hair spray; Hair styling preparations; Non-medicated anti-aging serum; Skin and body topical lotions, creams and oils for cosmetic use; Beauty creams for body care;

    b.   International Class 005 for the following goods which were allegedly first used in October 2019 in connection with the mark: Liquid vitamin supplements; Multi-vitamin preparations; Powdered nutritional supplement drink mix containing vitamins, proteins, amino acids, collagen, organic spirulina, and organic chlorella; Vitamin supplements; Vitamin tablets; Vitamin and mineral supplements; and

    c.   International Class 025 for the following goods which were allegedly first used in July 2016 and in which Counter-Plaintiffs do not allege any ownership interest: Jeans; Jumpsuits; Leggings; Pajamas; Pants; Shapewear; Shirts; Shorts; Skirts; Swimwear; Underwear; Athletic bottoms; Athletic tops; Jackets; Sports caps and hats.

109.    On October 14, 2020, unbeknownst to Counter-Plaintiffs, Counter-Defendants filed an application with the USPTO for the mark "RETO CUERPAZO PARA SIEMPRE" Registration No. 6409633, fraudulently naming the sole owner as MCM.  This mark includes International Class 041 for the following services which were first allegedly used on January 1, 2018: Providing fitness training services in the field of losing weight, losing body fat and reaching an ideal weight; Providing a website featuring information on exercise and fitness; Providing a website featuring non-downloadable articles in the field of health, fitness, and dietary challenges including

---

[2] 

nutritional tips with meal plans, recipes, tips for healthy habits and supplementation, and videos with exercise routines.

110.    Counter-Defendants fraudulently filed these marks behind Counter-Plaintiffs' back in order to avoid acknowledging Counter-Plaintiffs' rightful ownership interest in the marks. The marks should have been properly filed with both MCM and DIAZ WORLD TRADE GROUP, INC. as owners.

111.    In addition to fraudulently filing the above-mentioned marks, on June 3, 2022, Counter-Defendants fraudulently filed an application with the USPTO for the mark "PELAZO" Serial Number 97442059 naming MCM as the sole owner of the mark. This mark includes International Class 003 for future use for the following goods: Hair care creams; Hair care lotions; Hair care preparations; Hair-washing powder; Hair balsam; Hair cleaning preparations; Hair conditioner; Hair creams; Hair dressings for men; Hair lacquers; Hair mousse; Hair mousses; Hair nourishers; Hair oils; Hair products, namely, thickening control creams; Hair relaxers; Hair rinses; Hair shampoo; Hair spray; Hair straightening preparations; Hair styling gel; Hair styling preparations; Hair styling spray; Hair tonics; Non-medicated hair serums; Non-medicated hair care preparations; Oils for hair conditioning; Styling gels for enhancing hair.

112.    The "PELAZO" trademark and product was created by Counter-Plaintiffs in 2009 and actively sold that product from 2015 to 2019 and as such, the "PELAZO" trademark was created by Counter-Plaintiffs prior to the relationship between Counter-Plaintiffs and Counter-Defendants. See attached the Contract and Declaration which prove Counter-Plaintiffs prior use and ownership of the name "PELAZO."

113.    Counter-Plaintiffs never renounced, released, forfeited or in any way limited or gave up its ownership rights of the product or the trademark.

114.    MOLINA and MCM knew or should have known that they were not the sole rightful owners of any of the trademarks as described above.

115.    As such MOLINA and MCM made a material representation of fact as to the owners of the trademarks in those above-referenced applications.

116.    Counter-Plaintiffs were damaged due to MOLINA and MCM's misrepresentations and the fraudulently filed and registered or applied for trademarks.

**WHEREFORE,** Counter-Plaintiffs, DIAZ WORLD TRADE GROUP, INC. and MARCO DIAZ, respectfully request this Court enter judgment against Counter-Defendants, MARIA CLAUDIA MOLINA, for actual and compensatory damages, costs, pre-judgment interest, and for such further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Defendants/Counter-Plaintiffs DIAZ WORLD TRADE GROUP, INC. and MARCO DIAZ demands trial by jury on all issues so triable.

Respectfully Submitted,

**TREMBLY LAW FIRM**
*Counsel for Plaintiff*
9700 South Dixie Highway, PH 1100
Miami, Florida 33156
Telephone: (305) 431-5678
E-Mail: robert@tremblylaw.com
E-Mail: service@tremblylaw.com

By: /s/ Robert W. Brock II
  **Robert William Brock II**
  Florida Bar No. 75320
  **Natalie Martinez**
  Florida Bar No. 1003311

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 27, 2022, a true and correct copy of the foregoing was served via the Court's E-filing portal.

By: /s/ Robert W. Brock II
  **Robert William Brock II**