## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-23189-CV-GAYLES/TORRES

MCM ENTERTAINMENT, INC., *et al.*,

      Plaintiffs,

v.

DIAZ WORLD TRADE GROUP, INC., *et al.*,

      Defendants.

_____/

## REPORT AND RECOMMENDATION
## <u>ON PLAINTIFFS' MOTIONS TO DISMISS AND/OR STRIKE</u>

This matter is before the Court on Plaintiffs' motion to strike portions of Defendants' answer and affirmative defenses as well as Plaintiffs' motion to dismiss Defendants' counterclaims.   [D.E. 86, 89].   The motions have been fully briefed, and the Honorable Darrin P. Gayles has referred them to the undersigned for disposition. [D.E. 87, 91, 94, 96, 118].   Therefore, the motions are now ripe for adjudication. After careful consideration of the briefing and the relevant authority, and for the reasons discussed below, Plaintiffs' motion to strike should be **GRANTED IN PART and DENIED IN PART** and Plaintiffs' motion to dismiss should be **GRANTED.**

# I.   BACKGROUND

In their amended complaint, Plaintiffs – Maria Claudia Molina and two companies she is affiliated with – allege that Defendants have unlawfully engaged in trademark infringement, unfair competition, trademark dilution, deceptive and unfair trade practices, breach of contract, tortious interference, misappropriation of trade secrets, fraud, unjust enrichment, and civil conspiracy.   Plaintiffs also seek an accounting, constructive trust, and injunctive relief.   Defendants filed an answer that asserted numerous defenses, including some affirmative defenses.   Defendants separately filed 15 counterclaims.   Plaintiffs now seek to strike eight of Defendants' alleged defenses and to dismiss all of Defendants' counterclaims.

# II.   ANALYSIS

Plaintiffs have attacked almost every aspect of Defendants' pleadings in this case.   Accordingly, after reviewing the applicable standards of review, the Court addresses each dispositive argument in turn.

## A.   *Governing Principles*

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a claim for failure to state a claim upon which relief can be granted.   "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Conclusory statements, assertions, or labels will not survive a Rule 12(b)(6) motion to dismiss.   *Id*.   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." *Id.*; *see also Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010) (setting forth the plausibility standard). "Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555 (citation omitted). Additionally:

> Although it must accept well-pled facts as true, the court is not required to accept a plaintiff's legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (noting "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). In evaluating the sufficiency of a plaintiff's pleadings, we make reasonable inferences in Plaintiff's favor, "but we are not required to draw plaintiff's inference." *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005). Similarly, "unwarranted deductions of fact" in a complaint are not admitted as true for the purpose of testing the sufficiency of plaintiff's allegations. *Id.*; *see also Iqbal*, 556 U.S. at 681 (stating conclusory allegations are "not entitled to be assumed true").

*Sinaltrainal v. Coca-Cola*, 578 F.3d 1252, 1260 (11th Cir. 2009), *abrogated on other grounds by Mohamad v. Palestinian Auth.*, 566 U.S. 449, 453 n.2 (2012). The Eleventh Circuit has endorsed a "two-pronged approach" in applying these principles: (1) eliminate any allegations in the complaint that are merely legal conclusions; and (2) where there are well-pleaded factual allegations, assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (internal quotations omitted).

Additionally, a party may move to strike "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f). "An affirmative defense is one that admits to the complaint, but avoids liability, wholly or partly, by new allegations of excuse, justification or other negating matter." *Royal Palm Sav. Ass'n v. Pine Trace Corp.*, 716 F. Supp. 1416, 1420 (M.D. Fla. 1989)

(quoting *Fla. East Coast Railway Co. v. Peters*, 72 Fla. 311, 73 So. 151 (Fla. 1916)). Thus, affirmative defenses are pleadings, and as a result, must comply with the same pleading requirements applicable to complaints.   *See Home Management Solutions, Inc. v. Prescient, Inc.*, 2007 WL 2412834, at *1 (S.D. Fla. Aug. 27, 2007).   Affirmative defenses must also follow the general pleading standard of Rule 8(a), which requires a "short and plain statement" of the asserted defense.   *See Morrison v. Executive Aircraft Refinishing, Inc.*, 434 F. Supp. 2d 1314, 1318 (S.D. Fla. 2005).   A defendant must admit the essential facts of the complaint and bring forth other facts in justification or avoidance to establish an affirmative defense.   *See id.*

"The striking of an affirmative defense is a 'drastic remedy' generally disfavored by courts."   *Katz v. Chevaldina*, 2013 WL 2147156, at *2 (S.D. Fla. May 15, 2013) (citations omitted); *see also Blount v. Blue Cross & Blue Shield of Florida, Inc.*, 2011 WL 672450, at *1 (M.D. Fla. Feb. 17, 2011) ("Striking a defense . . . is disfavored by the courts."); *Pandora Jewelers 1995, Inc. v. Pandora Jewelry, LLC*, 2010 WL 5393265, at *1 (S.D. Fla. Dec. 21, 2010) ("Motions to strike are generally disfavored and are usually denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties") (internal quotations omitted) (quoting another source).   Affirmative defenses, however, will be stricken if they fail to recite more than bare-bones conclusory allegations.   *See Merrill Lynch Bus. Fin. Serv. v. Performance Mach. Sys.*, 2005 WL 975773, at *11 (S.D. Fla. Mar. 4, 2005) (citing *Microsoft Corp. v. Jesse's Computers & Repair, Inc.*, 211 F.R.D. 681, 684 (M.D. Fla. 2002)).   "An affirmative defense may also be stricken as insufficient if: '(1) on the face of the pleadings, it is patently frivolous, or (2) it is clearly invalid as a

matter of law.'"   *Katz*, 2013 WL 2147156, at *1.

An affirmative defense should only be stricken with prejudice when it is insufficient as a matter of law.   *See Kaiser Aluminum & Chemical Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1057 (5th Cir. 1982) (citing *Anchor Hocking Corp. v. Jacksonville Elec. Auth.*, 419 F. Supp. 992, 1000 (M.D. Fla. 1976)). Otherwise, district courts may strike the technically deficient affirmative defense without prejudice and grant the defendant leave to amend the defense.   *See Microsoft Corp.*, 211 F.R.D. at 684.

Finally, because the parties disagree about whether the plausibility standard enunciated in *Twombly* and *Iqbal* applies to affirmative defenses, we recognize that there is a split of authority in the Eleventh Circuit regarding whether affirmative defenses are subject to that heightened pleading standard.   This Court has previously endorsed the view that affirmative defenses, like complaints, must be plausibly alleged in accordance with *Twombly* and *Iqbal*.   *Thompson v. Carnival Corp.*, 2021 WL 7542956, at *2-4 (S.D. Fla. May 24, 2021).   We see no reason to deviate from our analysis there, and so we hold that Defendants' affirmative defenses must be plausibly alleged to withstand Plaintiffs' motion to strike.   With that said, however, it is obvious that affirmative defenses are not pled in a vacuum.   Unlike complaints, which initiate a lawsuit and must therefore stand independently on their own allegations, affirmative defenses are responsive in nature.   Thus, the plausibility of an affirmative defense can be assessed within the context of the complaint to which it responds.   And with these principles in mind, we proceed to consider whether Defendants' affirmative defenses are sufficiently alleged.

B.    _Plaintiffs' motion to strike defenses._

Plaintiffs' first motion attacks the first, fourth, sixth, seventh, eighth, ninth, tenth, and sixteenth defenses identified in Defendants' answer.   Some of these attacks have merit.   Others do not.   Each is discussed below.

### 1.    _Defense No. 1 should be stricken._

Defendants' first defense purports to be an affirmative defense, but Plaintiff submits that it should be stricken because it is not a "short and plain" statement of a defense to any of Plaintiffs' claims.   Rather, in Plaintiffs' view, this defense is merely a denial of facts alleged in Plaintiffs' amended complaint.   Defendants' first defense provides the following.

> Plaintiffs' claims regarding all common-law trademarks of the parties' implied partnership or joint venture are barred due to the existence of Defendants' implied ownership regarding trademarks registered during the parties' business relationship.

[D.E. 74 at 14].   Defendants dispute that the foregoing language amounts to nothing more than a denial, submitting instead that they have an implied ownership interest in certain common law trademarks and therefore Plaintiffs' claims are barred.

In our view, Defendants' description of this defense proves Plaintiffs' point. Defendants' first defense is effectively a denial of Plaintiffs' allegation that Plaintiffs own the trademarks at issue.   _See, e.g., Morrison,_ 434 F. Supp. 2d at 1318 ("[A] defense which simply points out a defect or lack of evidence in a plaintiff's case is not an affirmative defense.").   This defense should therefore be stricken as a redundant denial of Plaintiffs' allegations regarding their trademark ownership.

### 2.     *Defense No. 4 should be stricken.*

Defendants' fourth defense suffers from a similar infirmity because it merely denies, albeit in slightly different terms, that Plaintiffs own the trademarks at issue in this case:

> Plaintiffs' trademark registrations which were filed during the parties' business relationship are invalid, due to the trademarks being the common-law trademarks of the parties' implied partnership or joint venture.

[D.E. 74 at 14].  Again, this is not an affirmative defense but rather a denial of Plaintiffs' allegations regarding their valid ownership of the trademarks at issue. Defendants are not admitting, for example, that they have infringed on a trademark but may nevertheless avoid liability for some specified legal reason; they are instead denying that Plaintiffs will be able to satisfy their evidentiary burden.   Accordingly, this defense should similarly be stricken as a redundant denial.

### 3.     *Defense No. 6 should be stricken.*

Plaintiffs next attack Defendants' sixth defense on the basis of implausibility and an unfair lack of specificity.   Unlike the denials discussed above, this one is indeed an affirmative defense because it does not simple challenge an element of a prima facie claim and, instead, challenges Plaintiffs' entitlement for relief based upon other circumstances (many of them in fact):

> Plaintiffs' claims are barred by estoppel, acquiescence, waiver and/or unclean hands.

[D.E. 74 at 14].   Not surprisingly, Plaintiffs' quarrel with this defense is that Defendants failed to separately plead facts underlying these disparate defenses and, therefore, fails to give Plaintiffs fair notice of which claims defenses apply to which

claims.   To reiterate, responsive pleadings do not exist in a vacuum and therefore the plausibility of an estoppel allegation, for example, may be assessed within the context of the complaint to which it responds.   Here, however, Defendants concede that this defense lacks the "specificity" required at the pleading stage.

Defendants therefore ask the Court to amend their answer so that they can add the necessary factual support to this defensive allegation.   Unlike a motion to amend a pleading, however, inserting a request for leave to amend in response to a motion to strike is not the appropriate procedural method for amending a pleading. *See Newton v. Duke Energy Fla., LLC*, 895 F.3d 1270, 1277 (11th Cir. 2018) ("[W]here a request for leave to file an amended complaint simply is imbedded within an opposition memorandum, the issue has not been raised properly.").   That is particularly relevant now that discovery is drawing to a close in the case and the time for amendment of pleadings has passed.   So, for now, the Sixth Defense(s) should be Stricken.   If a motion to amend is filed, setting forth good cause why the motion should be considered and why it is not unduly prejudicial to Plaintiff, the Court can address that in due course.   For now, this defense as pleaded should be stricken.

### 4.   *Defense No. 7 should be stricken.*

Defendants' seventh defense is another denial masquerading as an affirmative defense.   It essentially makes the same denial as Defense Nos. 1 and 4, but with slightly different verbiage.

> Plaintiffs' claims are barred because Plaintiffs are not the owners of the marks filed after 2014 and they filed for federal registration of those marks during the parties' business relationship, due to the parties' implied partnership or joint venture which owned one or more common-law trademarks.

[D.E. 74 at 15].   This "affirmative defense" should similarly be stricken because it is nothing more than a denial of Plaintiffs' allegations regarding their ownership of the trademarks at issue.

### 5.     Defense No. 8 should not be stricken.

Unlike many of the other challenged defenses, Defendants' eighth defense states a viable defense with sufficient specificity to survive a motion to strike. Defendants allege:

> Defendants are the senior users of the common-law trademark PELAZO and have superior rights.

[D.E. 74 at 15].   The PELAZO trademark is expressly discussed in the operative complaint.   [D.E. 73 at 8] (alleging that Plaintiffs own the "PELAZO" trademark). And here, Defendants state in plain terms that they are the senior users of this trademark.   Plaintiffs therefore have received fair notice of Defendants' legal theory regarding why Plaintiffs' claims about the PELAZO trademark are untenable – i.e., Defendants allege that they are the "senior users" of the mark.   *See Tana v. Dantanna's*, 611 F.3d 767, 780-81 (11th Cir. 2010) (discussing "senior user" theory in a trademark infringement suit).   Such an allegation is not just a denial of a prima facie case; rather, it is a legal defense to relief on the trademark infringement claim as against a senior user like Defendants purport to be.   So, Defendants have the burden of establishing such a defense to negate liability from an otherwise viable trademark claim.

So, having reviewed the pleadings, we conclude that this particular defense is a plausibly alleged defense rather than a redundant denial.   As such, it need not be stricken.

### 6.     *Defense No. 9 should not be stricken.*

Plaintiffs attack this particular defense as an improper "shotgun pleading." Generally, a "shotgun pleading" is one in which "it is impossible to comprehend which specific factual allegations the plaintiff intends to support which of his causes of action, or how they do so."   *Estate of Bass v. Regions Bank, Inc.*, 947 F.3d 1352, 1358 (11th Cir. 2020).   Defense No. 9 provides the following:

> Plaintiffs failed to mitigate damages by seeking an arrangement to prevent or reduce consumer confusion before filing this lawsuit.

[D.E. 74 at 15].   We disagree with Plaintiffs that this constitutes an improper shotgun pleading.   Defendants' reference to consumer confusion in this context clearly connects the defense exclusively to Plaintiffs' trademark infringement claims, and the method of forgone mitigation is sufficiently defined to put Plaintiffs on notice regarding Defendants' failure-to-mitigate-damages theory.   We do not find that it is "impossible to comprehend" the specific factual allegations underlying this defense because Defendants expressly allege that it is Plaintiffs' pre-suit failure to seek an arrangement with Defendants that would prevent or reduce consumer confusion. This defense should not be stricken.

### 7.     *Defense No. 10 should be stricken.*

This affirmative defense simply alleges that Defendants' actions were justified by state and federal common law.   Plaintiffs submit that the factual allegations in the pleadings do not imbue this defense with the necessary plausibility given how broad and generalized the defense is asserted:

> Defendants' actions as alleged by Plaintiffs were justified under state and federal common law for trademarks.

[D.E. 74 at 15].   Defendants rely upon the allegations made in their counterclaims to conclude that this defense is sufficiently alleged.   Notably, this defense makes no attempt to connect itself to the allegations in Defendants' subsequently filed counterclaim; indeed, it expressly references Plaintiffs' allegations and *only* Plaintiffs' allegations.   Regardless, by pointing to their counterclaims, Defendants effectively highlight that they are again denying the validity of Plaintiffs' ownership of the trademarks at issue.   Thus, in Defendants' view, their actions were justified because Plaintiffs' claims against them are defective.   Putting aside the fact that Defendants' arguments here cut against the plain language of their pleading, we are nevertheless persuaded that this is yet another redundant denial purporting to be an affirmative defense.   Accordingly, this defense should be stricken.

### 8.    *Defense No. 16 should be stricken.*

This defense contains an allegation of fraud, and it is therefore subject to the more stringent pleading standard imposed by Federal Rule of Civil Procedure 9(b):

> Plaintiffs' claims are barred by its fraudulent application of the marks at issue.

[D.E. 74 at 16].   We agree with Plaintiffs that this allegation falls far below the requirements for pleading fraud under Rule 9(b), which requires parties to "state with particularity the circumstances" constituting the fraud.   FED. R. CIV. P. 9(b).   Based upon the foregoing language, and even when read in the context of the complaint, Plaintiffs and the Court are at a loss regarding the circumstances of the alleged fraud. Defendants suggest in their response that the fraud concerns the actions taken by Plaintiffs when registering the trademarks that were developed under an implied joint venture between the parties, but that nuance cannot be gleaned from

Defendants' vague statement above.   Moreover, in their response, Defendants disavow the plain text of this alleged defense because they submit that the "PELAZO" mark is not among the "marks" alluded to in Defense No. 16 even though it is clear that "PELAZO" qualifies as one of the "marks at issue" in the complaint.   [D.E. 87 at 7].   This defense fails to state the circumstances of the fraud with sufficient particularity, and it should therefore be stricken on that straightforward basis.

      **C.**    <u>**Plaintiffs' motion to dismiss counterclaims.**</u>

Plaintiffs' next motion attacks all but one of Defendants' counterclaims specifically.   Plaintiffs additionally submit two wholesale arguments against all of Defendants' counterclaims.   First, Plaintiffs argue that the counterclaims alleged against all of them (i.e., Ms. Molina, MCM, and Lunamar) should be dismissed as a shotgun pleading.   Second, Plaintiffs argue that the counterclaims against Ms. Molina individually should be dismissed because they are based on the alleged acts of corporate entities.   The Court finds these general arguments persuasive. Accordingly, for the reasons discussed below, all of Defendants' counterclaims should be dismissed.

      **1.**    <u>**The counterclaims alleged against all Plaintiffs should be dismissed as an improper shotgun pleading.**</u>

Regarding Plaintiffs' first wholesale argument, they submit that the counterclaims alleged against *all* Plaintiffs (i.e., Counterclaim Nos. 1, 2, 3, 4, 5, 6, 7, 10, 11, 12, 13, 14, and 15) must be dismissed as a shotgun pleading.   To reiterate, a "shotgun pleading" is one in which "it is impossible to comprehend which specific factual allegations the plaintiff intends to support which of his causes of action, or how they do so." *Estate of Bass*, 947 F.3d at 1358.

Plaintiffs note that each of them is distinct and imbued with a different legal status.  This is a correct observation:  Ms. Molina is a natural person, MCM is a corporation, and Lunamar is a limited liability company.  [D.E. 74 at ¶¶ 3-5].  It is well-established that each of them is therefore entitled to know the specific conduct that is allegedly attributed to them.  *See, e.g., Museum of Selfies, Inc. v. Miami Selfie, LLC*, No. 22-cv-20233, 2022 WL 1001485, at *4 (S.D. Fla. Apr. 3, 2022) (dismissing complaint because it was a "shotgun pleading" and therefore failed to give each of the defendants "fair notice" regarding "the claims against them and the grounds upon which each claim rests.").

The Eleventh Circuit has previously discussed the impropriety of pleading causes of action in a way that fails to fairly apprise the alleged wrongdoer of the specific misconduct with which he is charged.

> The complaint is replete with allegations that "the defendants" engaged in certain conduct, making no distinction among the fourteen defendants charged, though geographic and temporal realities make plain that all of the defendants could not have participated in every act complained of. Each count incorporates by reference the allegations made in a section entitled "General Factual Allegations"—which comprises 146 numbered paragraphs—while also incorporating the allegations of any count or counts that precede it. The result is that each count is replete with factual allegations that could not possibly be material to that specific count, and that any allegations that are material are buried beneath innumerable pages of rambling irrelevancies.

*Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001).

Here, Defendants pled 44 paragraphs of general allegations that are then expressly incorporated into every counterclaim.  [D.E. 74 at ¶¶ 1-44, 45, 52, 59, 66, 74, 84, 89, 94, 99, 106, 118, 123, 128, 135, 144].  Throughout these general allegations, Defendants occasionally identify each Plaintiff with specificity but

frequently reference them as one unit.

For example, in paragraph 35, Defendants allege that "Counter-Defendants fraudulently filed an application with the USPTO for the mark "PELAZO" . . . naming MCM as the sole owner of the Mark." Defendants later incorporate this allegation against all Plaintiffs to claim that they have collectively infringed a different trademark – the "Diaz World Trade Group Inc" mark. *See id.* at ¶¶ 106-17. It is clear from our review of the counterpleading that an allegation regarding Plaintiffs' allegedly fraudulent filing of a trademark application regarding the "PELAZO" mark has nothing to do with Plaintiffs' alleged infringement of the "Diaz World Trade Group Inc" mark. But Defendants nevertheless allege as much.

In their response to Plaintiffs' motion to dismiss, Defendants do not address Plaintiffs' shotgun pleading argument. Regardless of Defendants' silence, we are sufficiently persuaded that the counterclaims alleged against all Plaintiffs meet the definition of a shotgun pleading. Counterclaim Nos. 1, 2, 3, 4, 5, 6, 7, 10, 11, 12, 13, 14, and 15 should therefore be dismissed because shotgun pleadings are "fatally defective" in the Eleventh Circuit. *Museum of Selfies, Inc.*, 2022 WL 1001485, at *4 (quoting *B.L.E. v. Georgia*, 335 F. App'x 962, 963 (11th Cir. 2009)). And Defendants cite no authority for the proposition that counterclaims are immune from such review.

Having concluded that most of Defendants' counterclaims should be dismissed as a shotgun pleading, we turn next to the remaining counterclaims alleged solely against Ms. Molina.

2.   ___The counterclaims alleged against only Ms. Molina should___
     ___be dismissed for failing to state a claim.___

Regarding Plaintiffs' second wholesale argument, Ms. Molina is the only named Plaintiff in two of Defendants' counterclaims: Counterclaim No. 8 (breach of fiduciary duty) and Counterclaim No. 9 (fraud in the inducement).   Plaintiffs argue that the claims lodged against Ms. Molina individually must fail because the claims are premised upon the alleged actions of corporate entities that Ms. Molina is affiliated with – i.e., MCM or Lunamar – and these entities are legally distinct from Ms. Molina.

Under Florida law, which governs Counterclaim Nos. 8 and 9, the general rule is that companies are "legal entities separate and distinct from the persons comprising them."   *See, e.g., American States Ins. Co. v. Kelley*, 446 So. 2d 1085, 1086 (Fla. 4th DCA 1984); *Hanisch v. Clark*, 200 So. 2d 601, 604 (Fla. 3d DCA 1967) ("They are separate entities and in an action at law may not be regarded as one.").   Here, Plaintiffs argue that Defendants fail to plausibly allege how Ms. Molina is individually liable even though her conduct is expressly connected to the actions of distinct legal entities.

Considering Counterclaim No. 8, which alleges that Ms. Molina breached a fiduciary duty that she owed Mr. Diaz, it is clear that her alleged breaches arose through conduct that is attributed to Ms. Molina's companies rather than Ms. Molina as an individual.   For example, Defendants argue that part of the alleged conduct underlying this counterclaim concerns misrepresentations made by Ms. Molina in relation to the written "2018 DVD Agreement" that Plaintiff MCM entered into with Defendant DWTG. [D.E. 94 at 11-12] (discussing the factual basis for Counterclaim

No. 8); [D.E. 84-4] (the "2018 DVD Agreement").   Defendants neglected to respond to Plaintiffs' general argument that Ms. Molina is not a proper party.   Nevertheless, it is incumbent upon the Court to review the counterpleading and assess whether it plausibly suggests that MCM's corporate veil could be pierced in this case so that Ms. Molina, as an individual, could become a proper party.

Employing the corporate form to perpetrate a fraud is one legal basis for piercing the corporate veil under Florida law.   *See Dania Jai-Alai Palace, Inc. v. Sykes*, 450 So. 2d 1141, 1120 (Fla. 1984) ("The corporate veil will not be penetrated either at law or in equity unless it is shown that the corporation was organized or employed to mislead creditors or to work a fraud upon them."); *Kelley*, 446 So. 2d at 1086 ("Absent fraud, the corporate veil is not pierced.").   Here, because the counterpleading alleges specific misrepresentations made by Ms. Molina on behalf of MCM, we will assume for the sake of reaching Plaintiffs' Rule 12(b)(6) challenge that Defendants have alleged sufficient facts to theoretically pierce MCM's corporate veil and thereby proceed against Ms. Molina individually.[1]

But even if Defendants can succeed in piercing MCM's corporate veil based upon the facts alleged in their counterpleading, Defendants would still need to plausibly allege that Ms. Molina breached a fiduciary duty that she owed to Mr. Diaz. On this score, Defendants fall short of their pleading burden.

The elements of a claim for breach of fiduciary duty are (1) the existence of a fiduciary duty and (2) the breach of that duty, which (3) constitutes the proximate

---

[1]    As we discuss below, however, we are not persuaded that Defendants have sufficiently alleged their fraud-in-the-inducement counterclaim.

cause of the claimant's damages.   *Gracey v. Eaker*, 837 So. 2d 348, 353 (Fla. 2002). Here, we are not persuaded that Defendants have sufficiently alleged that Ms. Molina owed Mr. Diaz any fiduciary duty.   Defendants highlight that Ms. Molina's misrepresentations concerning the 2018 DVD Agreement form the foundation of this counterclaim; however, the 2018 DVD Agreement itself undermines Defendants' claim.

The 2018 DVD Agreement, which Defendants attached to their counterpleading, provides that it "sets out *the entire understanding* of the parties with respect to the subject matter hereof and any amendments changes or modifications shall have legal effect only if made in writing and signed by all parties hereto." [D.E. 84-4] (emphasis added).   Nothing in the 2018 DVD Agreement purports to establish a fiduciary relationship between the persons behind the parties to that agreement, and Defendants do not allege that any binding modification ever came to fruition.

Moreover, even when viewing the counterpleading as a whole and in the light most favorable to Defendants, we are not persuaded that Defendants have plausibly alleged the existence of a fiduciary relationship between Ms. Molina and Mr. Diaz that arose through other means.   To establish a fiduciary relationship, "a party must allege some degree of dependency on one side and some degree of undertaking on the other side to advise, counsel, and protect the weaker party."   *Watkins v. NCNB Nat. Bank of Florida, N.A.*, 622 So. 2d 1063, 1065 (Fla. 3d DCA 1993).   We cannot glean from the facts alleged in Defendants' counterpleading that Ms. Molina plausibly and individually assumed a responsibility to advise, counsel, and protect Mr. Diaz.   Nor

can we reasonably infer that, under these circumstances, Mr. Diaz was the weaker party or otherwise dependent upon Ms. Molina.   By contrast, the substance of the counterpleading suggests to us Ms. Molina and Mr. Diaz had an ongoing business collaboration through the entities they each controlled.   This collaboration was at times governed by written agreements, which was apparently the case for the 2018 DVD Agreement, and at other times their collaboration was governed by oral agreements, which was apparently the case for the 2017 DVD venture.   *See* [D.E. 84 at ¶¶ 12, 17].   We thus cannot find that Defendants have plausibly alleged that Ms. Molina breached her fiduciary duty because they have failed to allege facts that could plausibly give rise to the existence of a fiduciary relationship.   Counterclaim No. 8 should be dismissed.

Counterclaim No. 9 alleges fraud in the inducement, relating again to the 2018 DVD Agreement between Plaintiff MCM and Defendant DWTG.   Again, we find that the counterpleading alleges facts that could theoretically permit Defendants to pierce the corporate veil and proceed against Ms. Molina individually.   But again, even if we assume the potential for veil piercing, we ultimately find that this counterclaim fails to state a claim for which relief can be granted.

Defendants allege that, with respect to the 2018 DVD Agreement, Ms. Molina misrepresented the value of the DVD product by failing to disclose her intent to distribute the content of the DVD (i.e., the exercise routines) via online streaming in addition to the DVD.   Given that Defendants fail to allege any specifics regarding Ms. Molina's expected "value" of the DVD, we have some concerns regarding whether the counterpleading complies with the specificity requirement of Rule 9(b).   But we

gather that Ms. Molina *overstated* the expected value of the DVD, even if Defendants do not expressly define that overstatement.   The allegations otherwise define with some specificity the who, what, and when of the alleged fraud.   So, although it is a close call, we agree with Defendants that they have met their Rule 9(b) specificity burden.   But we do not reach the same result when considering the counterclaim in light of Defendants' Rule 12(b)(6) plausibility burden.

Defendants first submit that Ms. Molina's omission constitutes fraud because she was Mr. Diaz's fiduciary and was therefore obligated to inform him of her intent to distribute her workout videos on the internet as well as on a physical DVD.   We are not persuaded that Defendants have sufficiently alleged the existence of a fiduciary relationship and therefore this argument is similarly unpersuasive.

To be clear, nothing in the 2018 DVD Agreement could possibly give Defendants the right – or even the expectation – that they would be the exclusive distributor of the content on the DVD.   And to reiterate, the 2018 DVD Agreement reflected the "entire understanding" of the parties regarding the sale of this product. We cannot agree that Ms. Molina's failure to disclose that the content would be distributed in a streaming format in addition to the DVD constitutes a fraudulent omission when the contract governing the DVD distribution does not give Defendants a reasonable expectation of exclusivity regarding the distribution of the content on that DVD.   This is especially so considering that the alleged misrepresentation occurred in 2018 – a time at which it was arguably common knowledge that DVD's were outmoded technology and online streaming was rapidly becoming the dominant utility for the consumption of video content.

19

Moreover, under Florida law, a vague statement about the expected future value of the DVD can hardly be considered actionable fraud.  *See, e.g., Maunsell v. Am. Gen. Life and Accident Ins. Co*., 707 So. 2d 916, 917 (Fla. 3d DCA 1998) (holding that promises of a future promotion and the hiring of additional staff are not actionable as fraud); *Sleight v. Sun and Surf Realty, Inc*., 410 So. 2d 998, 999 (Fla. 3d DCA 1982) ("Florida law is well-settled that a misrepresentation must ordinarily relate to a past or existing fact to be the basis of a claim for relief sounding in fraud. A false statement amounting to a promise to do something in the future is not actionable fraud.") (internal citation omitted); *Zarrella v. Pac. Life Ins. Co.*, 755 F. Supp. 2d 1231, 1237 (S.D. Fla. 2011) ("Fraud must be based on material fact, not on a promise or a prediction of future events.").   Because Ms. Molina's alleged misrepresentation effectively boils down to a prediction regarding future events, we conclude that Defendants have failed to state a cause of action for fraud.

Accordingly, Counterclaim No. 9 should be dismissed.

### III.   CONCLUSION

For the foregoing reasons, Plaintiffs' motion to strike [D.E. 86] should be **GRANTED IN PART** and **DENIED IN PART** and Plaintiffs' motion to dismiss [D.E. 89] should be **GRANTED** as follows.[2]

---

[2]     We are persuaded on this record that, prior to filing this motion to strike, Plaintiffs discharged the conferral obligation imposed by S.D. Fla. L. R. 7.1(a)(3). Defendants dispute this point and ask for a procedural denial of Plaintiffs' motion on that basis.   Many of the arguments made by Plaintiffs in the instant motion are recycled from their previous motion to strike, [D.E. 31], which the Court denied as moot after Defendants filed their amended (but nonetheless substantially similar) pleadings.   In addition to prior motion practice regarding these issues, Plaintiffs represent that they attempted to confer with Defendants via email before filing the instant motion.   Under the circumstances, we find this to be a sufficient conferral

1.      Defense No. 1 should be **STRICKEN**;

2.      Defense No. 4 should be **STRICKEN**;

3.      Defense No. 6 should be **STRICKEN**;

4.      Defense No. 7 should be **STRICKEN**;

5.      Defense No. 8 should **NOT BE STRICKEN**;

6.      Defense No. 9 should **NOT BE STRICKEN**;

7.      Defense No. 10 should be **STRICKEN**;

8.      Defense No. 16 should be **STRICKEN**; and

9.      Counterclaim Nos. 1 through 15 should be **DISMISSED**.

Pursuant to Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the parties have fourteen (14) days from service of this Report and Recommendation within which to file written objections, if any, with the District Judge.   Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report *and* shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report.   28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *see, e.g., Patton v. Rowell,* 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Commissioner of Social Security,* 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

---

and therefore we decline to recommend denying the motion as procedurally deficient under our Local Rules.

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 30th day of

January, 2024.

EDWIN G. TORRES
Chief United States Magistrate Judge